**James L. KAHERMANES**

**v.**

**Steven MARCHESE, Sr., et al.**

**Civ. A. No. 72–1447.**

United States District Court,
E. D. Pennsylvania.

July 25, 1973.

David N. Brook, Norristown, Pa., for plaintiff.

Stanford S. Hunn, Mark B. Dischell, Lansdale, Pa., for defendants Marchese Sr. and Jr.

Michael J. Sheridan, Norristown, Pa., for defendants Giovinco, Fair and Hanley.

OPINION

LUONGO, District Judge.

Plaintiff, James L. Kahermanes, instituted this suit seeking compensatory and punitive damages from the defendants for conspiring to search and to arrest him and to defame him. In his complaint, plaintiff alleged that on April 14, 1972, he was one of several defendants who were on trial at the Montgomery County Courthouse in Norristown, Pennsylvania, on charges of assault and battery; that Steven Marchese, Jr., one of the complaining witnesses, and his father, Steven Marchese, Sr., told Deputy Sheriff Sergeant Fair that the plaintiff was carrying a concealed gun on his person; that shortly thereafter, Sergeant Fair and Deputies Hanley and Giovinco informed plaintiff that they wanted to search him; that plaintiff requested, and was granted, permission to consult with his attorney; that thereafter, plaintiff's attorney and Sergeant Fair appeared before the trial judge (Honorable Louis D. Stefan, Judge of the Court of Common Pleas of Montgomery County) who authorized the search with plaintiff's attorney's consent; that the search was conducted and no weapon was found; that shortly thereafter, plaintiff "passed out," suffered a "near stroke," and was taken by ambulance to a hospital.

Following the complained of occurrence, plaintiff sued five persons, Steven Marchese, Sr., Steven Marchese, Jr., Sergeant Fair, Deputy Hanley, and Deputy Giovinco. After depositions were taken, plaintiff voluntarily dismissed the action against Deputies Hanley and Giovinco. The remaining defendants, Steven Marchese, Sr., Steven Marchese, Jr., and Sergeant Fair, have now moved, pursuant to Fed.R.Civ.P. 56, for summary judgment on the ground that the record, which includes the depositions of all parties, demonstrates that there are no genuine issues of fact for trial and that, as a matter of law, they are entitled to judgment.

One fact which appears to be undisputed is that this suit arises from a larger dispute between factions of the Marchese family. For several years, they have been involved in a bitter family dispute which has culminated not only in civil suits over disputed family business interests, but also in criminal actions. One faction of the Marchese family is headed by Ben Marchese, a friend of the plaintiff, and the other faction is led by Steven Marchese, Sr., Ben's brother.

At the conclusion of the hearing on the motions for summary judgment on June 26, 1973, viewing the record in the light most favorable to the plaintiff, and drawing every reasonable inference in his favor, in an opinion delivered orally from the bench, I granted the motions of defendants Steven Marchese, Sr., and Sergeant Jack Fair on the ground that the evidence did not present a material issue for trial on the charge of conspiracy to defame, to search, or to arrest as to either of them. Sergeant Fair's motion was granted for the further reason that, as a deputy sheriff charged with responsibility for maintaining security in the courthouse, acting pursuant to authorization of a judge of the court, he was protected by the doctrine of judicial

immunity. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Henig v. Odorioso, 385 F.2d 491 (3d Cir. 1967), cert. denied, 390 U.S. 1016, 88 S.Ct. 1269, 20 L.Ed.2d 166 (1968); Haldane v. Chagnon, 345 F.2d 601 (9th Cir. 1965).

Of the original five defendants, therefore, only one remains, Steven Marchese, Jr. To the extent that his motion for summary judgment related to the conspiracy, it was granted as a partial summary judgment. As to the remainder of his motion, three questions were left open for decision. (1) Whether the intentional and malicious giving of false information by one person about another person to a police officer for the purpose of causing the other person to be arrested or searched states a cause of action under the Civil Rights Acts. (2) Whether there is any genuine issue of fact precluding the grant of summary judgment on the state law slander action (jurisdiction for which is based on diversity of citizenship). (3) Whether the damages can rise to the $10,000 jurisdictional level.

### 1. Civil Rights.

■■ The deliberate giving of false information by an individual to a police officer to cause the arrest of another does not give rise to a cause of action under the Civil Rights Acts. Plaintiff relies specifically on two sections, 42 U.S.C. §§ 1983 and 1985 (1970). Section 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Plaintiff's action cannot be sustained under this section since there is no basis for a finding that any of Marchese, Jr.'s actions were under color of state law. Plaintiff did allege a conspiracy between Marchese, Jr. and the deputy sheriffs which probably does state a cause of action under § 1983, considered in combination with § 1985(3),[1] see, e. g. Fulton v. Emerson Electric Co., 420 F.2d 527 (5th Cir. 1969), but entry of summary judgment in Sergeant Fair's favor, and the voluntary dismissal of the action against the other deputy sheriffs removed all possibility of establishing conspiracy as a possible ground of violation of these sections. The summary judgment in Sergeant Fair's favor was entered because the record simply presented no genuine issue of fact for trial as to any wrongdoing on his part.

■ Out of an abundance of caution, I have examined other Civil Rights Acts[2] which plaintiff did not cite and I am satisfied that plaintiff has no cause of action under any of them. The grant

---

1. "§ 1985. Conspiracy to interfere with civil rights—Preventing officer from performing duties

\* \* \* \* \* \* \*

(3) If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right

or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, . . . against any one or more of the conspirators."

2. 42 U.S.C. §§ 1971–1972; The Voting Rights Act of 1965, 42 U.S.C. § 1973 (1970); The Civil Rights Act of 1870, 42 U.S.C. §§ 1981–1982 (1970); 42 U.S.C. § 1994 (1970); The Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq. (1970); The Open Housing Act of 1968, 42 U.S.C. §§ 3601 et seq. (1970); and The Civil Rights Act of 1875, 18 Stat. 335.

of partial summary judgment in Marchese, Jr.'s favor, insofar as plaintiff's cause of action is based on violation of Civil Rights, is proper, and will be ordered.

### 2. *State Law Slander Action.*

■■ As to the part of this suit which is a tort action for slander, with jurisdiction based on diversity of citizenship, Marchese, Jr.'s motion for summary judgment is based on a claim of privilege. In Pennsylvania defamation cases, there is a qualified privilege which protects a person who communicates in good faith, without actual malice, with reasonable or probable grounds for believing his statements to be true, on a subject in which the speaker has an interest or social or moral duty, to a person having a corresponding interest or duty. Williams v. Kroger Grocery & Baking Co., 337 Pa. 17, 10 A.2d 8 (1940). If Marchese, Jr. had probable or reasonable grounds for believing that the plaintiff was carrying a gun, he was under a duty to inform the proper authorities of that fact, and Sergeant Fair was a proper authority to whom to communicate that information. Whether the communication was privileged, therefore, depends upon whether Marchese, Jr. had reasonable grounds to believe that the statement was true, or whether, on the other hand, the statement was made with malice. The record, in this regard, presents a genuine issue of fact for trial. Marchese, Jr. in his deposition, stated that, on the day of the search, he told Sergeant Fair that he had seen plaintiff in the courthouse lounge with a bulge in the area of his left shoulder several days before; that on that occasion plaintiff and others were harassing Marchese, Jr. and other members of his family; and that a police officer, Officer Corropolese, had observed the bulge and had surmised that it probably was a gun. (Marchese, Jr. Deposition pp. 8–14) Sergeant Fair's testimony made no mention of a police officer, or of a bulge. Sergeant Fair testified only that he was told by March-

ese, Jr. that Kahermanes might be carrying a gun. (Fair Deposition pp. 30–33) Officer Corropolese has not been deposed.

■■ Plaintiff's deposition was also taken. Plaintiff denied that he had ever owned a gun; denied that the harassment incident occurred; and denied that there was a bulge, or that there were any police in the lounge to observe any bulge. (Kahermanes Deposition pp. 63–66) These conflicts in the evidence are sufficient, in themselves, to raise an issue for trial as to whether Marchese, Jr. has reasonable grounds to believe his statement was true. In addition, a claim of qualified privilege can also be defeated if it is found that Marchese, Jr.'s statement to Sergeant Fair was motivated by malice toward the plaintiff. The history of conflict within the Marchese family; Kahermanes' friendship with one faction of the family; and the fact that the incident giving rise to this suit happened at the courthouse when Kahermanes was a defendant in a criminal action and Marchese, Jr. was one of the complaining witnesses, could very well combine with a finding of no reasonable ground to believe that Kahermanes was carrying a gun, to support a conclusion that Marchese, Jr.'s statement was made maliciously. See O'Donnell v. Philadelphia Record Co., 356 Pa. 307, 315, 51 A.2d 775, cert. denied, 332 U.S. 766, 68 S.Ct. 74, 92 L.Ed. 351 (1947).

Because there is a genuine issue of fact as to whether the communication was privileged, Marchese, Jr. is not entitled to summary judgment in his favor on the charge of defamation.

### 3. *Jurisdictional Amount.*

■ On this record, there is a serious question whether plaintiff has pleaded the jurisdictional amount of damages in good faith. This court has the power to determine the facts requisite to jurisdiction, Wetmore v. Rymer, 169 U.S. 115, 18 S.Ct. 293, 42 L.Ed. 682 (1898); and it is the court's duty to be vigilant to dismiss any diversity cases involving

less than the jurisdictional amount in controversy. The standard to be applied in ferreting out cases involving less than ten thousand dollars in damages is the same as in a motion for a remittitur. Nelson v. Keefer, 451 F.2d 289 (3d Cir. 1971).

The record as to damages is not complete, but some things are clear. Plaintiff does not claim loss of job or promotion as a result of the slander. The publication (of the information concerning gun-carrying) was extremely limited, and the effect of it was dissipated when the search turned up no weapon. The search itself, consisting merely of a pat-down, lasted only a few seconds and it took place in a remote corridor, witnessed only by a few secretaries. Moreover, such publication as there was took place in Norristown, Pennsylvania, away from the New Jersey communities in which plaintiff lives and works.

On the present state of the record, plaintiff has sustained special damages totalling approximately $200, consisting of ambulance charges, medical bills and lost wages. He contends that the slander and search caused him to "pass out" and to suffer a "near stroke," and that these physical symptoms were accompanied by pain, suffering and nervous shock. He will, of course, have the burden to establish the causal relationship. For the present, I am assuming that he will be able to do so, although there is, as yet, no medical evidence to substantiate plaintiff's bald assertion of cause and effect. Plaintiff is also seeking punitive damages, and punitive damages are recoverable if he can prove that the slander was maliciously or recklessly published. Leppley v. Smith, 91 Pa.Super. 117 (1927). Punitive damages are to be considered in determining whether the jurisdictional amount is in issue. 1 J. Moore, Federal Practice ¶ 0.93 [4] (1972). If there is a serious deficiency in compensatory damages, however, plaintiff may not rely very heavily on punitive damages to satisfy the jurisdictional amount, for in Pennsylvania punitive damages must be reasonably related, and not disproportionate, to the amount of compensatory damages. Suflas v. Cleveland Wrecking Co., 218 F.Supp. 289 (E.D.Pa.1963); Givens v. W. J. Wilmore Drug Co., 337 Pa. 278, 10 A.2d 12 (1940).

Although I believe it is unlikely that plaintiff will be able to approach the requisite jurisdictional amount in damages, I will not pass judgment on that at this time. Plaintiff is forewarned, however, that in due course a pretrial conference will be scheduled and plaintiff will then be required to demonstrate, by the procedures approved in Nelson v. Keefer, *supra*, that he has pleaded the jurisdictional amount in good faith. Plaintiff will be required, particularly, to present medical proof of causal relationship between the slander and search and the physical harm he claims to have suffered.