598 So.2d 65 (1992)
Anthony Steven FRIDOVICH, Petitioner,
v.
Edward FRIDOVICH, Respondent.
No. 77555.
Supreme Court of Florida.
April 2, 1992.
Rehearing Denied June 9, 1992.
Jeffrey D. Fisher, Palm Beach, and Scott Trell, Miami, for petitioner.
Ronald J. Russo and Linda Julin McNamara, Glenn, Rasmussen, Fogarty, Merryday & Russo, Tampa, for respondent.
BARKETT, Justice.
We have for review Fridovich v. Fridovich, 573 So.2d 65, 72 (Fla. 4th DCA 1990), in which the district court certified the *66 following question of great public importance:[1]
Are statements made by a private individual to an investigating officer or a prosecutor preliminary to the filing of a criminal charge absolutely privileged so as to avoid liability for defamation even when the statements are false and made with actual malice?
We answer the certified question in the negative for the reasons stated below.
On December 4, 1981, Martin Fridovich was shot and killed by his eighteen-year-old son, Edward Fridovich. After an extensive investigation, law enforcement authorities concluded that the shooting was accidental. No charges were filed and the investigation was closed.
Thereafter, according to the allegations of the complaint, Anthony Fridovich, Edward's brother, became dissatisfied with Edward's status as personal representative of their father's multi-million-dollar estate, and initiated a conspiracy among family members to have Edward charged for the intentional killing of Martin Fridovich. The complaint further alleges that Anthony purchased a stress analyzer to determine which of the conspirators could lie most convincingly. Erica Fridovich, Edward's sister, and her former husband, Michael Giannoutsos, were chosen to encourage the authorities to reopen the investigation by making false statements to investigators for the Plantation Police Department and members of the Broward County State Attorney's Office.
As a result of these actions, the investigation was reopened and Edward was indicted for first-degree murder in the death of his father. A jury found him guilty of the lesser-included offense of manslaughter. After the trial, Erica Fridovich and Michael Giannoutsos recanted and admitted that their in-court testimony had been false. After a reversal on other grounds, Edward was retried for manslaughter and convicted again without Erica and Michael's testimony.
Edward sued Anthony and the other conspirators for defamation, intentional infliction of mental distress, and malicious prosecution. The trial court dismissed the complaint and the district court affirmed the dismissal of the counts for defamation and malicious prosecution, but reversed the dismissal of the intentional infliction of emotional distress claim.[2]
The law in Florida has long been that defamatory statements made in the course of judicial proceedings are absolutely privileged, and no cause of action for damages will lie, regardless of how false or malicious the statements may be, so long as the statements are relevant to the subject of inquiry. Myers v. Hodges, 53 Fla. 197, 209, 44 So. 357, 361 (1907). The primary question we must answer in this case is whether defamatory statements made to the authorities prior to the initiation of criminal proceedings are absolutely privileged as within the course of judicial proceedings.
The scope of the privilege was outlined by this Court's opinion in Ange v. State:
This rule of privilege as applied to statements made in the course of judicial proceedings is not restricted to trials of actions, but includes proceedings before a competent court or magistrate in the due course of law or the administration of justice which is to result in any determination or action by such court or officer. This privilege extends to the protection of the judge, parties, counsel and witnesses, and arises immediately upon the doing of any act required or permitted by law in the due course of the judicial proceedings or as necessarily preliminary thereto.

98 Fla. 538, 540-41, 123 So. 916, 917 (1929) (emphasis added).
The same rule is found in the Restatement (Second) of Torts section 587 (1977):
A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning *67 another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.
(Emphasis added).
The plain wording of the rule as stated in Ange and in the Restatement suggests an easy resolution of this question. Indeed, in Ange the Court found that an absolute privilege barred an action for defamation based on statements made in the office of the county judge to whom the defendant had gone to obtain a warrant. 98 Fla. 538, 540, 123 So. 916, 917. An analogous case is Robertson v. Industrial Insurance Company, 75 So.2d 198, 199 (Fla. 1954), in which the Court held that an absolute privilege applied to defamatory statements made in a letter to the insurance commissioner used to institute license revocation proceedings.
Two of our district courts of appeal, however, have summarily found a qualified privilege on facts similar to the case at bar. Anderson v. Shands, 570 So.2d 1121, 1122 (Fla. 1st DCA 1990); Ridge v. Rademacher, 402 So.2d 1312, 1312 (Fla. 3d DCA 1981) ("We hold that an unsworn statement to a municipal police officer in regard to an alleged crime is not accorded an absolute privilege which will bar, as a matter of law, a subsequent action for slander based on such a statement, particularly when it is alleged to have been maliciously made." (footnote omitted)).[3]
Thus, although there are no recent Supreme Court decisions on this issue, it appears from these cases that the district courts are dissatisfied with the results of the absolute privilege as set forth in Ange and Robertson.
Turning to other jurisdictions, it appears that a majority of states that have addressed this issue have embraced a qualified privilege.[4]See Kahermanes v. Marchese, 361 F. Supp. 168, 172 (E.D.Pa. 1973); Marsh v. Commercial & Sav. Bank, 265 F. Supp. 614, 621 (W.D.Va. 1967); Miller v. Nuckolls, 77 Ark. 64, 91 S.W. 759, 761-62 (1905); Flanagan v. McLane, 87 Conn. 220, 87 A. 727, 728 (1913); Newark Trust Co. v. Bruwer, 51 Del. (1 Storey) 188, 141 A.2d 615, 617 (1958); Hardaway v. Sherman Enterprises, 133 Ga. App. 181, 210 S.E.2d 363, 364 (1974) (construing statute), cert. denied, 421 U.S. 1003, 95 S.Ct. 2405, 44 L.Ed.2d 672 (1975); Indiana Nat'l Bank v. Chapman, 482 N.E.2d 474, 479 (Ind. Ct. App. 1985); Cormier v. Blake, 198 So.2d 139, 144 (La. Ct. App. 1967); Robinson v. Van Auken, 190 Mass. 161, 76 N.E. 601, 602 (1906); Packard v. Central Me. Power Co., 477 A.2d 264, 268 (Me. 1984); Arnold v. Quillian, 262 So.2d 414, 415 (Miss. 1972); Hancock v. Blackwell, 139 Mo. 440, 41 S.W. 205, 207 (1897); Pierce v. Oard, 23 Neb. 828, 37 N.W. 677, 679 (1888); Dijkstra v. Westerink, 168 N.J. Super. 128, 401 A.2d 1118, 1120-21, certification denied, 81 N.J. 329, 407 A.2d 1203 (1979); Grossman v. Fieland, 107 A.D.2d 659, 483 N.Y.S.2d 735, 736 (1985); Paramount Supply Co. v. Sherlin Corp., 16 Ohio App.3d 176, 475 N.E.2d 197, 202-03 (1984); Magness *68 v. Pledger, 334 P.2d 792, 795 (Okla. 1959); Sylvester v. D'Ambra, 73 R.I. 203, 54 A.2d 418, 420 (1947); Moore v. Bailey, 628 S.W.2d 431, 436 (Tenn. Ct. App. 1981); Story v. Shelter Bay Co., 52 Wash. App. 334, 760 P.2d 368, 372-73 (1988); Otten v. Schutt, 15 Wis.2d 497, 113 N.W.2d 152, 156 (1962). See generally 50 Am.Jur.2d Libel and Slander § 214 (1970 & Supp. 1991) (stating that "a communication to a law enforcement officer is generally held to be qualifiedly privileged"); Annotation, Libel and Slander: Privilege Regarding Communications to Police or Other Officer Respecting Commission of Crime, 140 A.L.R. 1466-78 (1942) ("[T]he majority of cases expressly dealing with [communications to the police] hold that the privilege is qualified or conditional, not absolute.").
Nevertheless, a number of commentators take the position that an informal complaint to investigating authorities is to be regarded as the "initial step" in a judicial proceeding and thus is absolutely privileged. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 114, at 819-20 (5th ed. 1984); see Laurence H. Elldredge, The Law of Defamation § 73, at 356 (1978); 1 Arthur B. Hanson, Libel and Related Torts 87 (1969); Rodney A. Smolla, Law of Defamation § 8.03[3][c], at 8-12 (1991).
In deciding this issue we recognize the need to balance two important and competing interests, described by one scholar as "the right of the individual, on one hand, to enjoy [a] reputation unimpaired by defamatory attacks, and, on the other hand, the necessity, in the public interest, of a free and full disclosure of facts in the conduct of the legislative, executive, and judicial departments of government." Van Vechten Veeder, Absolute Immunity in Defamation: Judicial Proceedings, 9 Colum.L.Rev. 463, 464 (1909).
The fundamental public policy underlying the judicial proceedings privilege as it applies to preliminary investigations is the need to encourage free and unhindered communication to assist the authorities in detecting and prosecuting perpetrators of criminal activity. This is the traditional reason for applying an absolute privilege, as set forth in the Restatement:
These "absolute privileges" are based chiefly upon a recognition of the necessity that certain persons, because of their special position or status, should be as free as possible from fear that their actions in that position might have an adverse effect upon their own personal interests. To accomplish this, it is necessary for them to be protected not only from civil liability, but also from the danger of even an unsuccessful civil action. To this end, it is necessary that the propriety of their conduct not be inquired into indirectly by either court or jury in civil proceedings brought against them for misconduct in their position. Therefor the privilege, or immunity, is absolute and the protection that it affords is complete. It is not conditioned upon the honest and reasonable belief that the defamatory matter is true or upon the absence of ill will on the part of the actor.
Restatement (Second) of Torts § 584, at 243 (Introductory Note: "Absolute Privilege Irrespective of Consent") (emphasis added).
The egregious facts alleged in this case, however, make an eloquent argument for adopting a qualified privilege. According to Edward, his siblings instituted a conspiracy to have him falsely arrested, indicted, convicted, and sentenced for the first-degree murder of his own father, a charge that carries a maximum penalty of death. This was done after an initial police investigation had determined that the shooting of Martin Fridovich was accidental and that no charges should be filed against Edward. The second investigation that eventually led to the indictment of Edward allegedly was thus entirely of his brother's machinations. Furthermore, the complaint alleges that the conspirators actually purchased a stress analyzer to determine which family member could lie most convincingly to the police. Such carefully orchestrated plots to do harm are not lightly protected under the umbrella of absolute immunity. Indeed, an absolute privilege would frustrate the principle *69 that the courts should be open to redress every wrong.
Moreover, we believe that a plaintiff's burden of proof for establishing a case under a qualified privilege would likely deter most frivolous suits. In overcoming a qualified privilege, a plaintiff would have to establish by a preponderance of the evidence that the defamatory statements were false and uttered with common law express malice  i.e., that the defendant's primary motive in making the statements was the intent to injure the reputation of the plaintiff. See Nodar v. Galbreath, 462 So.2d 803, 806 (Fla. 1984). Of course, the facts alleged in this case, if proven, would be sufficient to satisfy even this rigorous standard.
After careful consideration of all the issues, we agree with the observation by the court below that a qualified privilege "is sufficiently protective of [those] wishing to report events concerning crime and balances society's interest in detecting and prosecuting crime with a defendant's interest not to be falsely accused." Fridovich, 573 So.2d at 70.[5] There is no benefit to society or the administration of justice in protecting those who make intentionally false and malicious defamatory statements to the police. The countervailing harm caused by the malicious destruction of another's reputation by false accusation can have irreparable consequences. We believe the law should provide a remedy in situations such as this.[6] We thus hold, as a majority of the other states have held in this context, that defamatory statements voluntarily[7] made by private individuals to the police or the state's attorney prior to the institution of criminal charges are presumptively qualifiedly privileged.[8] We therefore recede from Ange and Robertson to the extent they are inconsistent with our ruling today.
The other issue in this case involves Edward's suit for intentional infliction of emotional distress. The district court reversed the trial court's dismissal of this claim. Anthony argues that to allow a plaintiff who has not overcome a defamation privilege to proceed with a claim for intentional infliction of emotional distress would defeat the purpose of the privilege.
It is clear that a plaintiff is not permitted to make an end-run around a successfully invoked defamation privilege by simply renaming the cause of action and repleading the same facts. Obviously, if the sole basis of a complaint for emotional distress is a privileged defamatory statement, then no separate cause of action exists. See Anderson v. Rossman & Baumberger, P.A., 440 So.2d 591, 593 (Fla. 4th DCA 1983) (finding no cause of action for intentional infliction of emotional distress *70 where the primary conduct relied on was defamatory statements in court pleadings), review denied, 450 So.2d 485 (Fla. 1984). In short, regardless of privilege, a plaintiff cannot transform a defamation action into a claim for intentional infliction of emotional distress simply by characterizing the alleged defamatory statements as "outrageous." See Boyles v. Mid-Florida Television Corp., 431 So.2d 627, 636 (Fla. 5th DCA 1983), approved on other grounds, 467 So.2d 282 (Fla. 1985).
We thus find that the successful invocation of a defamation privilege will preclude a cause of action for intentional infliction of emotional distress if the sole basis for the latter cause of action is the defamatory publication. However, that privilege will not prevent recovery upon separate causes of action which are properly pled upon the existence of independent facts.
Accordingly, we answer the certified question in the negative and remand to the district court for proceedings consistent with this opinion.
It is so ordered.
SHAW, C.J., and OVERTON, GRIMES, KOGAN and HARDING, JJ., concur.
McDONALD, J., dissents with an opinion.
McDONALD, Justice, dissenting.
I believe the price to be paid for the cause of action approved by the majority is too great to allow it. In this case we are asked to resolve an issue that lies somewhere between the interest in allowing individuals to have legal redress for injuries to their reputations and the competing societal interest in bringing criminals to justice. I conclude that statements made to law enforcement officers, state attorneys, or other law enforcement personnel prior to the initiation of judicial proceedings should be absolutely privileged.
There is a compelling societal interest in encouraging citizens to come forth and report suspected criminal activity. This Court should not aggravate the already existing problem of crimes not brought to justice by citizens terrified of adverse repercussions to their safety and welfare, both physical and economic, by adding to that fear the possibility of economic strangulation resulting from successful, or even unsuccessful, civil litigation. See Restatement (Second) of Torts § 584 (1977).
The reporting of many crimes is caused by actual malice against the wrongdoer. A mother reports child abuse because of anger and malice against the perpetrator. A jilted lover reports a previously concealed crime such as robbery, theft, or homicide because of malice against the former lover. Such examples exist throughout the criminal justice system, and we should not deter the reporting of crime. I believe this will happen if we allow a defamation action for statements made to police or prosecutors prior to the filing of charges. It defies logic to clothe statements made under oath with a cloak of absolute privilege, where false communications are already deterred via possible prosecution for false swearing and perjury, while not granting such protection to unsworn statements, which are similarly tempered by possible civil action for malicious prosecution.
Individuals whose reputations are irreparably harmed due to false accusations to law enforcement officers or state attorneys, but who prevail in that prosecution, are able to recover damages from that accuser via an action for malicious prosecution. This is an adequate remedy. Warriner v. Burdines, Inc., 93 So.2d 108 (Fla. 1957). In cases such as the one before us, where the accusations result in the conviction of a felon, it is better public policy not to punish people who are instrumental in securing such convictions regardless of their motivation. The majority's opinion places too much emphasis on the "alleged" facts in its adoption of qualified privilege without due consideration of its ramifications. The facts before us are indeed "egregious," but are more likely exceptional rather than usual. Future actions for defamation in similar contexts will likely be founded upon "milder" circumstances. I fear that, under the view adopted by the majority, many unsubstantiated actions for *71 defamation will, with the help of competent counsel, withstand summary judgment, thus exposing individuals to the high costs of litigation. This scenario creates an intolerable "chilling effect" on individuals who are considering reporting suspected criminal activity.
Absolute privilege, in my view, is the preferred policy. Thus, I believe that no cause of action predicated on statements made to police, prosecutors, or other law enforcement personnel should exist when the goal is prosecution of the allegedly defamed person. I could accept the premise of the majority when a nonpenal interest is at stake, such as that which existed in Robertson v. Industrial Insurance Co., 75 So.2d 198 (Fla. 1954), and Nodar v. Galbreath, 462 So.2d 803 (Fla. 1984). These situations do not involve accusations of crimes to law enforcement agencies.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution.
[2] Edward does not contest the dismissal of the count for malicious prosecution.
[3] An earlier case from the Third District, Buchanan v. Miami Herald Publishing Co., 206 So.2d 465, 467 (Fla. 3d DCA 1968), modified, 230 So.2d 9 (Fla. 1969), extended an absolute privilege to persons who procure false testimony for presentation to the grand jury. Buchanan is not on point, however, because the alleged defamatory statements in that case were published to the grand jury, not to the police, and thus were clearly within the scope of the judicial proceedings privilege.
[4] A handful of states have found an absolute privilege. See General Elec. Co. v. Sargent & Lundy, 916 F.2d 1119, 1125-27 (6th Cir.1990) (construing Kentucky law); Borg v. Boas, 231 F.2d 788, 794 (9th Cir.1956) (construing Idaho Law); Cutts v. American United Life Ins. Co., 505 So.2d 1211, 1215 (Ala. 1987); Starnes v. International Harvester, 184 Ill. App.3d 199, 132 Ill.Dec. 566, 568-69, 539 N.E.2d 1372, 1374-75, appeal denied, 127 Ill.2d 642, 136 Ill.Dec. 607, 545 N.E.2d 131 (1989); Ducosin v. Mott, 292 Or. 764, 642 P.2d 1168, 1169-70 (1982); Hott v. Yarborough, 112 Tex. 179, 245 S.W. 676, 678-79 (1922).

We further note that two California courts of appeal are in direct conflict on this issue. Compare Williams v. Taylor, 129 Cal. App.3d 745, 181 Cal. Rptr. 423 (1982) (finding an absolute privilege) with Fenelon v. Superior Court, 223 Cal. App.3d 1476, 273 Cal. Rptr. 367, 371 (1990) (finding a qualified privilege). We find the reasoning expressed in Fenelon more persuasive.
[5] Although not entirely responsive to the general policy underlying the absolute privilege, we note, as the New Jersey and California courts have noted, that in formal judicial proceedings "the potential harm which may result from the absolute privilege is somewhat mitigated by the formal requirements such as notice and hearing, the comprehensive control exercised by the trial judge whose action is reviewable on appeal, and the availability of retarding influences such as false swearing and perjury prosecutions." Dijkstra v. Westerink, 168 N.J. Super. 128, 401 A.2d 1118, 1121 (quoting Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 117 A.2d 889, 894 (1955)), certification denied, 81 N.J. 329, 407 A.2d 1203 (1979); see Fenelon v. Superior Court, 223 Cal. App.3d 1476, 273 Cal. Rptr. 367, 370-71 (1990). These safeguards are not present when citizens make statements to the authorities involving alleged criminal activity.
[6] Accord Moore v. Bailey, 628 S.W.2d 431, 436 (Tenn. Ct. App. 1981) ("To hold the doctrine of privilege applicable to investigatory situations such as this  especially so very preliminary in nature  would be to give license to those with ill will and malice toward others to harass them unmercifully simply by addressing their vituperative comments to law enforcement or other governmental investigatory authorities.").
[7] Our ruling does not apply to statements made under a state attorney's investigatory subpoena. Such statements would be encompassed within a judicial proceeding and thus would be absolutely privileged.
[8] In so holding, we emphasize that the privilege only applies to statements voluntarily made to the police or a prosecuting attorney and not to defamatory statements made to private individuals. Thus, for example, the defamatory statements allegedly made by Anthony and his sister to the family housekeeper are not privileged at all.