961 So.2d 356 (2007)
Charles G. OLSON, Appellant,
v.
Theresa C.M. JOHNSON, Janet M. Tassinari, and Jeannine Johnson-Williams, Appellees.
No. 2D05-3804.
District Court of Appeal of Florida, Second District.
June 29, 2007.
*357 Charles G. Olson, pro se.
Gregory S. Roe of Tetreault & Roe, A Partnership of P.A.s, St. Petersburg, for Appellee Theresa C.M. Johnson.
No Appearance for Appellees Janet M. Tassinari and Jeannine Johnson-Williams.
CANADY, Judge.
Charles G. Olson sued Theresa C.M. Johnson and the other appellees for "conspiracy in the commission of acts constituting *358 malicious prosecution and abuse of judicial process." Olson now appeals from a summary final judgment in favor of Johnson. In her second amended motion for summary judgment, Johnson asserted that Olson's complaint was filed after expiration of the four-year statute of limitations, that his claims were barred by the doctrine of sovereign immunity, and that because Johnson's statements were privileged there was no disputed issue of material fact. We conclude that Johnson did not establish that she was entitled to summary judgment.

I. Background

On March 30, 1996, the police were called to Johnson's house in response to a stalking complaint. Johnson, Jeannine M. Johnson-Williams (Johnson's sister-in-law), and Janet M. Tassinari (the mother of Olson's child), claimed that Olson was lurking outside Johnson's house while Tassinari was visiting with the other two women. Tassinari told the responding police officer that she was in fear for her life because she and Olson were in a custody battle and that Olson had drug connections and access to a lot of money. Johnson also told the officer that she was afraid for her own safety. On that basis, the officer initiated a stalking report, and each of the women filed and signed affidavits.
On August 5, 1996, Olson was charged with stalking. However, Olson was acquitted of the charge on January 8, 1997. Thereafter, on March 22, 2000, Olson filed his complaint against the three women. Johnson then filed her answer along with two motions for summary judgment.[1]
Olson then filed an affidavit from the attorney who represented him in the criminal case, Bruce G. Howie. In that affidavit, Howie delineated Tassinari's trial testimony and explained that documentary evidence established that Olson had been six miles away purchasing items at a department store during the time of the alleged stalking incident at Johnson's home. In his deposition, Olson testified he was at the department store at the time of the alleged stalking. Olson also testified that during another stalking incident alleged by the women, he was at a birthday party for a friend.
The record also contains reports from the guardian ad litem, which indicate that Olson and Tassinari were involved in a bitter custody battle and that Tassinari had, on at least one occasion, attempted to interfere with Olson's attempts to exercise visitation with the child.
The trial court granted Johnson's second motion for summary judgment on June 23, 2005. This appeal follows.

II. Analysis

We apply a de novo standard of review to an order granting summary judgment. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). A party moving for summary judgment must conclusively demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Id. "In determining whether a genuine issue of material fact exists, this court must view `every possible inference in favor of the party against whom summary judgment has been entered.'" Estate of Githens ex rel. Seaman v. Bon Secours-Maria Manor Nursing Care Ctr., Inc., 928 So.2d 1272, 1274 (Fla. 2d DCA 2006) (quoting Maynard v. Household Fin. Corp. III, 861 So.2d 1204, 1206 (Fla. 2d DCA 2003)). "It is the movant's burden to prove the nonexistence of genuine issues of material fact, `and the *359 burden of proving the existence of such issues is not shifted to the opposing party until the movant has successfully met his burden.'" Id. (quoting Nard, Inc. v. DeVito Contracting & Supply, Inc., 769 So.2d 1138, 1140 (Fla. 2d DCA 2000)).
In our analysis, we will address the asserted grounds for summary judgment with respect to the claim based on malicious prosecution. The parties have not  either in the trial court or on appeal  addressed the specific elements of a claim of abuse of process  a cause of action which is distinct from malicious prosecution. Since the parties have not developed this issue but have treated the abuse of process aspect of the case as wholly subsidiary to the malicious prosecution aspect, we will not address the issue of abuse of process.

A. Requirements for Malicious Prosecution Actions and for Conspiracy Claims

In order to prevail in a malicious prosecution action, the plaintiff must establish each of six elements: (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.
Durkin v. Davis, 814 So.2d 1246, 1248 (Fla. 2d DCA 2002). "In an action for malicious prosecution it is not necessary for a plaintiff to prove actual malice; legal malice is sufficient. . . ." Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352, 1357 (Fla.1994). Legal malice, which is also referred to as technical malice or malice in law, "requires proof of an intentional act performed without justification or excuse." Reed v. State, 837 So.2d 366, 368-69 (Fla. 2002). "Legal malice may be inferred from one's acts," and  unlike actual malice  "does not require proof of evil intent or motive." Id. at 369.
A cause of action for conspiracy requires showing "(a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to [the] plaintiff as a result of the acts performed pursuant to the conspiracy." Walters v. Blankenship, 931 So.2d 137, 140 (Fla. 5th DCA), review denied by McNeely v. Walters, 942 So.2d 412 (Fla. 2006); see also Armbrister v. Roland Int'l Corp., 667 F.Supp. 802, 809 (M.D.Fla.1987) ("A cause of action for conspiracy comprises the following elements[:] an agreement between two or more persons to achieve an illegal objective, one or more overt acts pursuant to that agreement, and resulting injury to the plaintiff.").

B. The Cause of Action Was Not Barred by the Statute of Limitations

The statute of limitations for both malicious prosecution and civil conspiracy is four years. See § 95.11(3)(o), (p), Fla. Stat. (Supp.1996). "A cause of action accrues when the last element constituting the cause of action occurs." § 95.031(1), Fla. Stat. (1995).
For a cause of action for malicious prosecution, the right to maintain a suit arises upon termination of the prosecution favorably to the plaintiff. See Cazares v. Church of Scientology of Cal., Inc., 444 So.2d 442, 447 (Fla. 5th DCA 1983); McMurray v. U-Haul Co., 425 So.2d 1208, *360 1211 (Fla. 4th DCA 1983). Here then if Olson's claim is treated as a malicious prosecution claim, the date that a cause of action accrued would be January 8, 1997, and Olson's complaint, filed March 22, 2000, would be within the four-year limitations period.
A conspiracy cause of action accrues when the plaintiff suffers damages as a result of the acts performed pursuant to the conspiracy. "The last of [the] elements [of conspiracy] will necessarily be the injury to the plaintiff." Armbrister, 667 F.Supp. at 809; see also Timmins v. Firestone, 283 So.2d 63, 64 (Fla. 4th DCA 1973) (recognizing in an action for conspiracy to libel and intentionally interfere with business and marital and family relations, cause of action accrued when defendants did overt acts resulting in newspaper publications  i.e., when the injury occurred).
Here, although Olson testified that he believed the conspiracy among the appellees started in 1993 and that his income began to be affected in 1995, his complaint seeks damages for the conspiracy with respect to the stalking complaint made against him on March 30, 1996. The first injury which was the result of that conspiracy occurred when he was arrested for stalking on August 5, 1996. Clearly then, Olson's March 22, 2000, complaint  viewed as a claim for conspiracy  was filed within the statute of limitations and summary judgment could not be granted on that basis.

C. Olson's Claim is Not Barred By Any Privilege

Johnson asserts that she was entitled to summary judgment because her statements accusing Olson were protected by an absolute privilege. Alternatively, Johnson asserts that a qualified privilege is applicable and is sufficient to defeat Olson's claim. We conclude that neither an absolute nor a qualified privilege applies here.
In support of her claim of privilege, Johnson relies on the decision in Fridovich v. Fridovich, 598 So.2d 65 (Fla.1992), in which the Florida Supreme Court was presented with the certified question of whether a person who makes statements to law enforcement about another individual prior to the instigation of judicial proceedings is protected by an absolute privilege against liability for defamation. The court held that "defamatory statements voluntarily made by private individuals to the police or the state's attorney prior to the institution of criminal charges are presumptively qualifiedly privileged." Id. at 69 (footnote omitted). Such voluntary statements are treated differently than "statements made under a state attorney's investigatory subpoena," which are "encompassed within a judicial proceeding and thus [are] absolutely privileged." Fridovich, 598 So.2d at 69 n. 7.
Johnson's reliance on Fridovich is unwarranted. In relying on Fridovich, Johnson confuses the law of defamation  with which Fridovich deals  with the law of malicious prosecution  which is at issue in the instant case. Olson has made no claim based on defamation, and the fact that defamatory statements may have been made in the course of the conduct which Olson alleges as the basis for his claim does not transform that claim into a defamation claim that is subject to an assertion of the absolute privilege or qualified privilege discussed in Fridovich.[2] There is no equivalent privilege available to a complaining *361 witness such as Johnson who is named as a defendant in a malicious prosecution action. Such a defendant must defend against a malicious prosecution claim by disputing an element or elements of the cause of action alleged or by raising an applicable affirmative defense.

D. Johnson Has Not Established the Absence of a Disputed Issue of Material Fact on the Element of Malice

If Johnson could establish beyond dispute that the malice element  or any other essential element  of Olson's claim lacked evidentiary support, Johnson would be entitled to judgment as a matter of law. She has, however, not made that showing.
Legal malice "may be inferred from, among other things, a lack of probable cause, gross negligence, or great indifference to the rights of others." Mancusi, 632 So.2d at 1357. Here, Olson "produced evidence from which a jury could infer that" Johnson and the other appellees "intentionally provided false information to [the] authorities." Id. Johnson relied on the existence of an asserted "presumption of good faith" arising from her claim of privilege to establish that there was no disputed issue of fact with respect to the malice element of the malicious prosecution claim. Since there is no available privilege, this argument with respect to the malice element collapses. And Johnson has not claimed an absence of disputed issues of material fact with respect to any of the other elements of Olson's claim.

E. Sovereign Immunity Does Not Apply

Finally, Johnson has failed to explain how her actions in filing the police affidavit could possibly be protected by sovereign immunity. The fact that Olson alleged that various governmental employees were part of the alleged conspiracy has no bearing on whether Johnson should receive sovereign immunity for her conduct. While police officers, state attorneys, and judges may be protected for their actions done pursuant to their lawful duties, Johnson fails to cite any authority which would extend sovereign immunity to a citizen reporting an alleged crime.

III. Conclusion

We therefore hold that (a) the action was not barred by the statute of limitations, (b) there was no applicable privilege, (c) Johnson failed to show the absence of a disputed material fact with respect to the malice element or any other element of Olson's claim, and (d) Johnson was not protected by sovereign immunity. We reverse the summary final judgment and remand for further proceedings.
Reversed and remanded.
WHATLEY and NORTHCUTT, JJ., Concur.
NOTES
[1] Co-defendant Jeannine M. Johnson-Williams defaulted on May 31, 2000, while Tassinari filed an answer denying the majority of the allegations made by Olson.
[2] We note that in American National Title & Escrow of Florida, Inc. v. Guarantee Title & Trust Co., 810 So.2d 996, 998 (Fla. 4th DCA 2002), considering a claim that "the defendants conspired to maliciously give false information to law enforcement authorities resulting in [one of the plaintiffs] being wrongfully arrested, jailed and charged with crimes," the courtciting Fridovich  rejected a claim of absolute privilege and stated that the defendants "would enjoy at most a qualified privilege, which could be overcome by proof that false information was given to law enforcement authorities with intent to injure plaintiffs." There is no indication that the plaintiffs had made any claim for defamation. There is also no indication that the issue of qualified privilege was presented to the court. The court's comments regarding the availability of a qualified privilege thus appear to be dicta.