# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2025-0444
LT Case No. 35-2022-CA-828

_____

CENTRAL FLORIDA
PSYCHOLOGICAL CONSULTANTS,
INC., and W. STEVEN SAUNDERS,

    Petitioners,

    v.

JON COMAS,

    Respondent.

_____

Petition for Certiorari Review of Order
from the Circuit Court for Lake County,
Michael G. Takac, Judge.

Derek J. Angell, of O'Connor, Haftel & Angell, PLLC, Orlando,
for Petitioners.

Dale R. Sisco, Tampa, for Respondent.

May 8, 2026

SOUD, J.

    Petitioners Central Florida Psychological Consultants, Inc. and W. Steven Saunders petition us for a writ of certiorari quashing the trial court's denial of their motion for summary judgment as to two of three counts in the action brought against

them by Respondent Jon Comas. They argue that the litigation privilege grants them absolute immunity from the suit. We grant the petition.

## I.

Comas and his wife got divorced. The legal proceedings surrounding timesharing with their two children endured for years. During the litigation, Saunders was a court-appointed psychologist ordered to provide the presiding judge with a report and recommendations pertaining to a parenting plan.

Ultimately, Comas filed a civil suit against Saunders and Central Florida Psychological Consultants, Inc., the practice Saunders owned. The thrust of Comas's claims is that Saunders was negligent in the preparation of his report recommending a parenting plan during supplemental proceedings in Comas's divorce case.

Saunders and his practice moved for summary judgment, arguing the common law litigation privilege affords absolute immunity from the suit. Comas contended, as he does here, that his claims are permitted by section 61.122(4), Florida Statutes (2022). The trial court denied Petitioners' motion on two of Comas's three claims.

This certiorari petition followed.

## II.

The discretionary common law writ of certiorari is an extraordinary remedy because by it we "reach down and halt a miscarriage of justice where no other remedy exists." *See DRJ Atl., LLC v. Babadi*, 392 So. 3d 1114, 1118 (Fla. 5th DCA 2024) (citing *Adventist Health Sys./Sunbelt, Inc. v. Machalek*, 383 So. 3d 534, 536 (Fla. 5th DCA 2023)). We grant certiorari only when a petitioner demonstrates that a challenged order (1) departs from the essential requirements of law, (2) resulting in material injury for the remainder of the case, (3) that cannot be corrected on post-judgment appeal. *See Dep't of Child. & Fams. v. State*, 380 So. 3d 1263, 1267 (Fla. 5th DCA 2024). The last two requirements, combined into the concept of "irreparable harm," are jurisdictional

2

and must be found to exist before we consider whether an order departs from the essential requirements of law. *See id.*

A trial court's denial of a motion for summary judgment claiming immunity from suit is reviewable via certiorari because such absolute immunity protects a party from having to defend against suit at all "and waiting until final appeal would render such immunity meaningless if the lower court denied dismissal in error." *James v. Leigh*, 145 So. 3d 1006, 1008 (Fla. 1st DCA 2014). Thus, if Petitioners are immune from Comas's suit, they have demonstrated irreparable harm sufficient to invoke our certiorari jurisdiction.

The question that remains, then, is whether the trial court's denial of summary final judgment in favor of Saunders and his practice constitutes a departure from the essential requirements of law. It does.

A.

"A departure from the essential requirements of the law is something 'more than just a legal error.'" *Fucci v. State*, 420 So. 3d 523, 526 (Fla. 5th DCA 2023) (quoting *Citizens Prop. Ins. Corp. v. San Perdido Ass'n*, 104 So. 3d 344, 351 (Fla. 2012)). "It occurs '*only* when there has been a violation of a clearly established principle . . . resulting in a miscarriage of justice.'" *Id.* (quoting *Allstate Ins. Co. v. Kaklamanos*, 843 So. 2d 885, 889 (Fla. 2003)). Such a clearly established legal principle "can derive from a variety of legal sources, including recent controlling case law, rules of court, statutes, and constitutional law." *Kaklamanos*, 843 So. 2d at 890.[1]

---

[1] Certiorari will lie in the rare instance when a trial court has followed binding precedent from another district court that is plainly wrong and should be rejected because it conflicts with the unambiguous language of a statute. *See State v. Jones*, 283 So. 3d 1259, 1268 (Fla. 2d DCA 2019) ("Our supreme court has held that although circuit courts are 'bound to apply existing precedent from another district if its district has not yet spoken on the issue,' the circuit court's use of such precedent creates a departure from the essential requirements of the law if 'the circuit court followed binding precedent from another district that was clearly contrary

3

To decide whether the trial court departed from the essential requirements of law, we must consider both the litigation privilege and section 61.122(4), Florida Statutes, as each applies to the facts and claims presented in this case.

1.

The litigation privilege finds its origins in English common law. *See Myers v. Hodges*, 44 So. 357, 360–61 (Fla. 1907). In its early development in the United States, the privilege shielded parties, judges, counsel, and witnesses from liability for defamatory statements that were "connected with, or relevant or material to, the cause in hand or subject of inquiry. If they be so published and are so relevant or pertinent to the subject of inquiry, no action will lie therefor, however false or malicious they may in fact be." *Id.* at 361; *see also Fridovich v. Fridovich,* 598 So. 2d 65, 66 (Fla. 1992). As a result, causes of action for the torts of perjury, libel, slander, defamation, and similar proceedings could not be maintained. *See Myers*, 44 So. at 360–61.

The privilege was born from balancing two competing and important interests. *See Debrincat v. Fischer*, 217 So. 3d 68, 70 (Fla. 2017). On one hand is an individual's rights, including the right to maintain his reputation and remain free from slander or malicious conduct. *See id.* On the other is the public's strong interest in allowing parties to advocate "freely and zealously" for their causes in courts of law. *Id.* After considering these interests, Florida "has long followed the rule, overwhelmingly adopted by the weight of authority, that such torts [for defamatory statements] committed in the course of judicial proceedings are not actionable." *Wright v. Yurko,* 446 So. 2d 1162, 1164 (Fla. 5th DCA 1984) (footnote omitted).

Recognizing this history, in *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, the Florida Supreme Court extended the reach of the litigation privilege. 639 So. 2d 606, 608 (Fla. 1994). There, the court specifically

to the plain language of the statute itself.'" (quoting *Nader v. Fla. Dep't of High. Saf. & Motor Veh.*, 87 So. 3d 712, 724, 726 (Fla. 2012))).

4

determined that this privilege provides absolute immunity from suit, not just for defamatory statements, but for "any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . , so long as the act has some relation to the proceeding." *Id.* "Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct." *Id.*

Through the years, the litigation privilege continued its evolution into the form we have today—one that sweeps broadly in Florida. "The litigation privilege applies *across the board* to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute, or of some other origin." *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007) (emphasis added). As a result, the absolute immunity provided by the privilege "must be afforded to any act occurring during the course of a judicial proceeding . . . so long as the act has some relation to the proceeding."[2] *Id.*

While the litigation privilege has expansive reach in Florida law, it is not without exception. For example, the privilege does not insulate a defendant from a viable claim for malicious prosecution, which has been long recognized in Florida. *See Debrincat*, 217 So. 3d at 70–71 (citing *Tatum Bros. Real Est. & Inv. Co. v. Watson*, 109 So. 623, 626 (Fla. 1926)). The corpus of a malicious prosecution claim is that a defendant tortiously, maliciously, and without legal justification engaged the machinery of litigation so as to cause the plaintiff damages. *See id.* at 70 (discussing the elements to be proven in an action for malicious prosecution). Thus, the conduct alleged in such a claim must, of necessity, occur within the context

---

[2] As observed in *Echevarria*, the Florida Supreme Court has noted that while immunity for such conduct may be established, "adequate remedies still exist for misconduct in a judicial proceeding, most notably the trial court's contempt power, as well as the disciplinary measures of the state court system and bar association." 950 So. 2d at 384.

of litigation. To hold such an action barred by the litigation privilege would be to erase the cause of action from the books because "malicious prosecution could never be established if causing the commencement or continuation of an original proceeding against the plaintiff were afforded absolute immunity under the litigation privilege." *Id.* at 70. As a result, "the litigation privilege does not bar the filing of a claim for malicious prosecution." *Id.* at 71.

2.

But considering the litigation privilege does not end our inquiry. Citing *Estape v. Seidman*, 269 So. 3d 565, 569 (Fla. 4th DCA 2019), Comas contends section 61.122(4) abrogates the privilege in this family law context and authorizes his action against Saunders and his practice for negligent acts that deviated from applicable standards. His argument stretches the language of the statute beyond its breaking point.

Pertinent here, section 61.122(4) provides:

> If a legal action, whether it be a civil action, a criminal action, or an administrative proceeding, is filed against a court-appointed psychologist in a dissolution of marriage . . . matter involving the relationship of a child and a parent, including time-sharing of children, the claimant is responsible for all reasonable costs and reasonable attorney's fees associated with the action for both parties if the psychologist is held not liable. If the psychologist is held liable in civil court, the psychologist must pay all reasonable costs and reasonable attorney's fees for the claimant.

§ 61.122(4), Fla. Stat.[3]

Of course, when interpreting Florida statutes, our "task is to give effect to the words that the legislature has employed in the

---

[3] Section 61.122(4) was amended in 2025. Our analysis would be the same under the 2025 version of the statute.

statutory text." *Lab'y Corp. of Am. v. Davis*, 339 So. 3d 318, 323 (Fla. 2022). In doing so, we follow the supremacy-of-the-text principle, which directs "that '[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.'" *Coates v. R.J. Reynolds Tobacco Co.*, 365 So. 3d 353, 354 (Fla. 2023) (alteration in original) (quoting *Levy v. Levy*, 326 So. 3d 678, 681 (Fla. 2021)). In the end, our objective "is to arrive at a 'fair reading' of the text by 'determining the application of [the] text to given facts on the basis of how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued.'" *D.L. v. Cmty. Based Care of Brevard, Inc.*, 51 Fla. L. Weekly D280 (Fla. 5th DCA Feb. 13, 2026) (alteration in original) (quoting *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 947 (Fla. 2020)).

Distilled to its essence, section 61.122(4) is an attorney's fees statute. The statute requires that "[i]f a legal action . . . is filed," a claimant (such as Comas) is responsible for the attorney's fees "for both parties" if the court-appointed psychologist (such as Saunders) is found not liable. § 61.122(4), Fla. Stat. On the other hand, if a psychologist is found liable "in civil court" then he must pay all reasonable costs and fees incurred by the claimant. *See id.* This language presupposes the legal ability of a claimant to bring a cognizable and then-existing cause of action. The language of the statute does not create a new cause of action, nor does it authorize a claim where none otherwise exists.

Comas's reliance on section 61.122(4) as abrogating the litigation privilege and authorizing his claims against Saunders simply requires the language of the statute to carry more than it can bear. "A basic rule of textual interpretation is that 'statutes will not be interpreted as changing the common law unless they effect the change with clarity.'" *Peoples Gas Sys. v. Posen Constr., Inc.*, 322 So. 3d 604, 611 (Fla. 2021) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 318 (2012)). Accordingly, we will interpret section 61.122(4) to displace the common law privilege only to the extent "clearly necessary." *Essex Ins. Co. v. Zota*, 985 So. 2d 1036, 1048 (Fla. 2008) ("It is a well-settled rule of Florida statutory construction that [s]tatutes in derogation of the common law . . . will not be

interpreted to displace the common law further than is clearly necessary." (internal quotation marks and citation omitted)).

Here, the statute makes no mention whatsoever of the long-existing common law litigation privilege.[4] In the face of this silence, it is unreasonable to conclude the Legislature abrogated the litigation privilege *sub silentio*. If in fact the Legislature intended to take the extraordinary step of abrogating this privilege, such would be its constitutional prerogative.[5] But the Legislature must clearly say so, as "[a]ny such intent must be gleaned from the text, structure, and purpose of the Act." *Peoples Gas Sys.*, 322 So. 3d at 608.

## B.

Thus, the litigation privilege protects Saunders and his clinic from the negligence claims brought by Comas based on Saunders's report and recommendations as a court-appointed psychologist in Comas's divorce case "involving the relationship of a child and a

---

[4] When writing statutes, the Florida Legislature is presumed to be aware of relevant decisions of Florida courts. *See Potter v. Potter*, 317 So. 3d 255, 258 (Fla. 1st DCA 2021).

[5] The Florida Constitution vests all legislative power and prerogative in our state legislature. *See* Art. III, § 1, Fla. Const. Thus, the Florida Legislature's power is plenary until it meets with the restraining boundaries otherwise drawn by the Florida Constitution or the supremacy of federal law on subject matter granted to the national government by the States. *See Neisel v. Moran*, 85 So. 346, 349 (Fla. 1919). As such, the Legislature's prerogatives are not constitutionally cabined by the common law. Rather, the Florida Legislature has addressed the common law for itself—granting legal force and effect to the English common law existing before July 4, 1776, "provided, the said . . . common law be not inconsistent with the Constitution and laws of the United States and the acts of the Legislature of this state." § 2.01, Fla. Stat. This wording plainly declares the acts of the Legislature superior to the common law crafted by the courts.

8

parent, including time-sharing of children." § 61.122(4), Fla. Stat. The litigation privilege provides Petitioners absolute immunity from suit, not just for defamatory statements in any report or testimony, but for "any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . , so long as the act has some relation to the proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A.,* 639 So. 2d at 608.

There is no dispute that Saunders was appointed by the trial court to provide a parenting plan recommendation during Comas's divorce case. Every action, representation, and recommendation necessarily arose from and is related to that appointment. Thus, Saunders and his clinic are afforded absolute immunity from Comas's suit by the litigation privilege.

Our conclusion does not render section 61.122(4) without effect as to civil claims against court-appointed psychologists. Rather, those actions contemplated by the statute are those that would otherwise survive the litigation privilege, such as a claim for malicious prosecution. *See, e.g.*, *Yurko*, 446 So. 2d at 1165–67 (allowing a malicious prosecution claim against both the parties and their supporting expert witness in an underlying medical malpractice action); *see also* Restatement (Second) of Torts, §§ 586–588 (Am. L. Inst. 1977). Here, Comas makes no claim against Petitioners for malicious prosecution or any other theory of recovery that has been deemed to survive the litigation privilege. Rather, he only alleges that Saunders was negligent in preparing his recommendations and fell below the standards that a reasonable court-appointed psychologist would use to develop the recommended parenting plan, at its core a general negligence claim entitled to immunity under the facts presented. Thus, his suit is barred.

## III.

As a result, because Petitioners have demonstrated that the trial court departed from essential requirements of law in denying their motion for summary judgment based on absolute immunity afforded by the litigation privilege, we GRANT the petition for writ of certiorari and QUASH the trial court's denial of summary judgment. In issuing the writ, the trial court is instructed to grant

9

the motion for summary judgment as to all counts and enter judgment in favor of Petitioners.

It is so ordered.


JAY, C.J., and MAKAR, J., concur.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____