SILBERMAN, Judge.
Cricket Properties, LLC, seeks review of the final judgment in its action to quiet title to real property it acquired by purchase of a tax deed. The final judgment quiets title as to Regions Bank and Sun-trust Bank but does not quiet title as to any lien Nassau Pointe at Heritage Isles Homeowners Association may have had for unpaid assessments. We reverse because, under sections 197.552 and 197.573(2), Florida Statutes (2011), any lien for unpaid assessments did not survive the issuance of the tax deed.
In January 2012, Cricket commenced the quiet title action by filing a verified complaint. The two banks failed to answer, and the clerk entered defaults against them. But Nassau filed an answer and raised as its third affirmative defense that Cricket was liable for “all unpaid assessments that came due up to the time of transfer of title” under section 720.3085(2)(b), Florida Statutes (2011).[1] Cricket filed a motion to strike this affirmative defense in which it argued that section 720.3085(2)(b) was inapplicable and that, under section 197.573(2), tax deed purchasers acquire property free and clear of liens for assessments. The trial court denied the motion.
Cricket subsequently filed a second amended motion for summary judgment asserting it was entitled to summary judgment quieting title against Nassau and the two banks. In response to Nassau’s third affirmative defense, Cricket reasserted its argument that it acquired the property free and clear of any liens for unpaid assessments by virtue of section 197.573(2). The issue before the trial court on Nassau’s third affirmative defense was whether section 720.3085(2)(b) or section 197.573(2) controlled. The court ultimately concluded that section 720.3085(2)(b) supersedes the provision in section 197.573(2).
*304 The court thereafter entered a final judgment quieting title in Cricket’s favor as to the banks’ claims. But the judgment does not quiet title as to any lien Nassau may have had for unpaid assessments accrued prior to the tax deed sale. Instead, the judgment states that those claims survive the tax deed sale “without prejudice to any affirmative defense that [Cricket] may wish to raise at that time.” The judgment also concluded the lawsuit, noting that Nassau’s pleadings did “not put before the Court the issue of whether any association assessments were actually owed to [Nassau] at the time of the tax deed sale.”
On appeal, Cricket argues that the trial court erred in ruling that section 720.3085(2)(b) supersedes the provision in section 197.573(2) and therefore controls the issue of whether any lien for assessments survives the issuance of the tax deed. This matter of statutory interpretation presents a question of law subject to de novo review. GTC, Inc. v. Edgar, 967 So.2d 781, 785 (Fla.2007).
Chapter 197 governs the collection of ad valorem taxes and provides that the government shall have a first lien position on all real property for payment of such taxes. See § 197.122(1). To collect unpaid taxes, the legislature devised a statutory scheme providing for a tax deed sale of the property at a public auction with the proceeds to be first applied to the outstanding taxes and costs of the sale. See §§ 197.542.582(1).
Section 197.552 addresses the limitation on the survival of rights, interests, restrictions, and other covenants in connection with a tax deed sale and provides, in pertinent part, as follows:
Except as specifically provided in this chapter, no right, interest, restriction, or other covenant shall survive the issuance of a tax deed, except that a lien of record held by a municipal or county governmental unit, special district, or community development district, when such lien is not satisfied as of the disbursement of proceeds of sale under the provisions of s. 197.582, shall survive the issuance of a tax deed.
(Emphasis added.)
Section 197.573 is the provision of chapter 197 that specifically describes the restrictions and covenants that survive a tax deed and those that do not. This section provides, in pertinent part, as follows:
(1) When a deed in the chain of title contains restrictions and covenants running with the land, as hereinafter defined and limited, the restrictions and covenants shall survive and be enforceable after the issuance of a tax deed or master’s deed, or a clerk’s certificate of title upon foreclosure of a tax deed, tax certificate, or tax lien, to the same extent that it would be enforceable against a voluntary grantee of the owner of the title immediately before the delivery of the tax deed, master’s deed, or clerk’s certificate of title.
(2) This section shall apply to the usual restrictions and covenants limiting the use of property; the type, character and location of building; covenants against nuisances and what the former parties deemed to be undesirable conditions, in, upon, and about the property; and other similar restrictions and covenants; but this section shall not protect covenants creating any debt or lien against or upon the property, except one providing for satisfaction or survival of a lien of record held by a municipal or county governmental unit, or requiring the grantee to expend money for any purpose, except one that may require that the premises be kept in a sanitary or sightly condition or one to abate nuisances or undesirable conditions.
*305 § 197.573 (emphasis added). Thus, under sections 197.552 and 197.573(2), neither covenants governing assessments nor liens for unpaid assessments survive the issuance of a tax deed. See Sugarmill Wood Oaks Vill. Ass’n v. Wires, 766 So.2d 487, 489 (Fla. 5th DCA 2000). It is this statutory scheme on which Cricket relies to argue that it acquired the property free of any liens Nassau may have had for unpaid assessments.
Chapter 720, on which Nassau relies, governs the procedures for the operation of homeowners associations. See § 720.302(1). Section 720.312, which was enacted in 1995,[2] provides for the survival of all restrictions and covenants in connection with a tax deed sale as follows:
All provisions of a declaration of covenants relating to a parcel that has been sold for taxes or special assessments survive and are enforceable after the issuance of a tax deed or master’s deed, or upon the foreclosure of an assessment, a certificate of lien, a tax deed, tax certificate, or tax lien, to the same extent that they would be enforceable against a voluntary grantee of title to the parcel immediately before the delivery of the tax deed or master’s deed or immediately before the foreclosure.
(Emphasis added.) Section 720.312 acts as a “safeguard” for covenants governing assessments which would otherwise have been extinguished under section 197.573(2) by the issuance of a tax deed. Sugarmill, 766 So.2d at 489 (construing the prior version of section 720.312, which was section 617.312, and noting that the statute preserved the power of homeowners associations to assess liens against property “purchased pursuant to a tax deed, in futuro”). However, section 720.312 omits any mention of hens and therefore does not safeguard liens for unpaid assessments from being extinguished under section 197.573(2) by the issuance of a tax deed. See id.
Section 720.3085(1), which was enacted in 2007,[3] provides that associations have a lien on property to secure payment of assessments if provided for in the governing documents. Section 720.3085(2) addresses the liability of a parcel owner for assessments as follows: ■
(a)- A parcel owner, regardless of how his or her title to property has been acquired, including by purchase at a foreclosure sale or by deed in lieu of foreclosure, is liable for all assessments that come due while he or she is the parcel owner. The parcel owner’s liability for assessments may not be avoided by waiver or suspension of the use or enjoyment of any common area or by abandonment of the parcel upon which the assessments are made.
(b) A parcel owner is jointly and severally liable with the previous parcel owner for all unpaid assessments that came due up to the time of transfer of title. This liability is without prejudice to any right the present parcel owner may have to recover any amounts paid by the present owner from the previous owner.
(Emphasis added.) Consistent with section 720.312, section 720.3085(2)(a) imposes liability for future assessments on a new parcel owner. And section 720.3085(2)(b) imposes liability for unpaid assessments that were due at the time title was transferred. The primary question before the trial court was whether subsection (2)(b) acts as a “safeguard” for liens for unpaid *306 assessments which would otherwise have been extinguished under section 197.573(2) by the issuance of a tax deed. The resolution of that question turns in large part on the related question of whether acquisition of property by a tax deed is a “transfer of title.”
The trial court answered the primary question in the affirmative and implicitly answered the related question in the affirmative. The court construed section 720.3085(2)(b) as providing that liens for unpaid assessments survive the' issuance of a tax deed. The court concluded that section 197.573(2) was superseded by section 720.3085(2)(b) because section 720.3085(2)(b) was enacted later in time. We find these conclusions to be inconsistent with the rules of statutory construction.
When construing a statute, the polestar that guides a court is the legislature’s intent. Larimore v. State, 2 So.3d 101, 106 (Fla.2008). To determine legislative intent, a court must first look to the plain language of the statute. Additionally, a court should interpret a statute so as to give effect to every provision therein and to harmonize all of its parts. And a court must read related statutory provisions “ ‘together to achieve a consistent whole’ ” so as to “ ‘give full effect to all statutory provisions and construe related statutory provisions in harmony with one another.’ ” Id. (quoting Heart of Adoptions, Inc. v. J.A., 963 So.2d 189, 199 (Fla.2007)).
The plain language of section 720.3085(2)(b) provides that new parcel owners are jointly and severally liable with prior owners “for all unpaid assessments that came due up to the time of transfer of title.” The intent of this statute is obviously to impose liability for previously accrued assessments on a new parcel owner who acquires property by transfer of title. As with section 720.312, section 720.3085(2)(b) omits any mention of the survival of liens and therefore does not safeguard liens for unpaid assessments from being extinguished under section 197.573(2) by the issuance of a tax deed. See Sugarmill, 766 So.2d at 489.
The plain language of section 720.3085(2)(b) imposes liability in relation to property acquired by “transfer of title.” And it is well-settled that a tax deed does not represent a transfer of title but constitutes the commencement of a “new, original and paramount” title. Blume v. Giles, 143 Fla. 615, 197 So. 344, 346 (1940); see also Dean v. Kane, 106 Fla. 814, 143 So. 656, 657 (1932) (holding that a tax title “creates in the purchaser a new and original title entirely disconnected with that of the former owner”).
The legislature acknowledged this distinction by using contrasting language defining parcel owners in subsections (2)(a) and (b) of section 720.3085. Subsection 2(a), which addresses the obligation for assessments accruing after title has been acquired, applies to a parcel owner “regardless of how his or her title to property has been acquired.” However, this language is omitted frofn subsection (2)(b), which addresses the obligation for assessments accruing before a new parcel owner acquires property by transfer of title. This omission calls for the application of the rule of statutory construction that by mentioning one thing the legislature intended to exclude the other, or “expressio uhius est exclusio alteráis.” See Thayer v. State, 335 So.2d 815, 817 (Fla.1976). That is, by failing to include the phrase “regardless of how his or her title to property is acquired” in subsection (2)(b), the legislature intended to exclude it. Thus, subsection (2)(b) should not be construed as applying to a parcel owner “regardless of how his or her title to property is acquired,” but to a parcel owner who has *307 acquired title only by certain designated means; i.e., transfer. And acquisition of title by tax deed does not represent a transfer of title. See Blume, 197 So. at 346.
Accordingly, the trial court erred in determining that section 720.3085(2)(b) provides that liens for unpaid assessments survive the issuance of a tax deed. Furthermore, the trial court erred in concluding that section 720.3085(2)(b) supersedes sections 197.552 and 197.573(2). First of all, these related statutory provisions can be harmonized so that all three are given effect. Under sections 197.552 and 197.573(2), liens for unpaid homeowners assessments do not survive the issuance of a tax deed and are extinguished. Section 720.3085(2)(b) does not save such liens from extinguishment when parcel owners acquire title by tax deed. Instead, parcel owners who acquire title by transfer, rather than by tax deed, remain liable for unpaid assessments.
Second, even if the statutes were in conflict, sections 197.552 and 197.573(2) control because they are the more specific statutes. It is well settled that a more specific statute covering a particular subject is controlling over one covering the same subject in general terms. Mendenhall v. State, 48 So.3d 740, 748 (Fla.2010). Two facially conflicting statutes can therefore be harmonized where one statute “addresses the precise factual setting under consideration.” Palm Harbor Special Fire Control Dist. v. Kelly, 500 So.2d 1382, 1385 (Fla. 2d DCA), affirmed, 516 So.2d 249 (Fla.1987).
Section 720.3085(1) addresses the hen rights of associations and the effective dates of such liens. Section 720.3085(2)(a) addresses the parcel owner’s liability for assessments that come due during his or her ownership, and section 720.3085(2)(b) addresses a parcel owner’s joint and several liability for unpaid assessments that came due up to the time that title is transferred. But these sections do not address whether unpaid assessments survive the issuance of a tax deed in the first place. Instead, sections 197.552 and 197.573(2) specifically address the survival or extin-guishment of liens and encumbrances after issuance of a tax deed. This is the precise factual setting the trial court was required to consider. Sections 197.552 and 197.573(2) are therefore the more specific statutes as to the key issue, and any conflict must be resolved in their favor.
In summary, the trial court erred in concluding that section 720.3085(2)(b) provides that liens for unpaid assessments survive the issuance of a tax deed. And the court erred in concluding that section 720.3085(2)(b) supersedes the provisions in sections 197.552 and 197.573(2). Under sections 197.552 and 197.573(2), any lien Nassau may have had for unpaid homeowners association assessments did not survive the issuance of the tax deed. Accordingly, the trial court erred in refusing to quiet title as to Nassau.[4]
Reversed and remanded.
NORTHCUTT and CASANUEVA, JJ„ Concur.

. Nassau did not file a counterclaim seeking to recover a money judgment for these unpaid assessments. Nor did Nassau file any type of affidavit or other evidence specifying from what date it alleged the unpaid assessments were owed.

. See ch. 95-274, § 62, at 2553, Laws of Fla. (enacting section 617.312, which was subsequently renumbered as section 720.312 by ch.2000-258, § 51, at 2587, Laws of Fla.).

. See ch.2007-183, § 1, at 1603, Laws of Fla.

. We do not reach the viability of any claim Nassau might have for a money judgment for the unpaid assessments. Nassau did not file a counterclaim seeking a money judgment in this case, and the trial court noted it did not reach the issue of "whether any association assessments were actually owed.”