NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

AGM INVESTORS, LLC,                    )
                                       )
          Appellant,                   )
                                       )
v.                                     )          Case No. 2D14-4704
                                       )
BUSINESS LAW GROUP, P.A., a            )
Florida Corporation, BRUCE M.          )
RODGERS, MICHAEL H.                    )
CASANOVER, BRANDON R. BURG,            )
and LM FUNDING, LLC, a Florida         )
limited liability company,            )
                                       )
          Appellees.                   )
_____)

Opinion filed April 19, 2017.

Appeal from the Circuit Court for Pasco
County; Stanley R. Mills, Judge.

Adam J. Knight and Laura L. Whiteside of
Hicks | Knight, P.A., Tampa, for Appellant.

Jacob A. Brainard and Scott C. Davis of
Business Law Group, P.A., Tampa, for
Appellees Business Law Group, Bruce M.
Rodgers, Michael H. Casanover, and
Brandon R. Burg.

No appearance for remaining Appellee.


SALARIO, Judge.

AGM Investors, LLC, appeals from a final summary judgment in favor of Business Law Group, P.A. and its associated lawyers Bruce M. Rodgers, Michael H. Casanover, and Brandon R. Burg (collectively, Business Law Group) on AGM's third-party claims against them for abuse of process and related torts. The claims arise from Business Law Group's unfounded filing of multiple claims of lien on behalf of a condominium association based on a single debt arising from unpaid assessments that AGM, as a subsequent tax deed purchaser, never owed. The trial court determined that the filing of each claim of lien was subject to the absolute privilege against such actions that is afforded when they are made by counsel in connection within a judicial proceeding. As we explain, the unusual facts of this case and limited summary judgment record leave material factual disputes bearing on whether the filing of two of those claims of lien can be regarded as necessarily preliminary to judicial proceedings so as to be covered by the absolute privilege. We reverse.

I.

This case involves Business Law Group's efforts to collect unpaid condominium association assessments on behalf of Glendale Villas Condominium Association. In 2008, the association hired LM Funding, LLC to collect unpaid assessments and enforce the association's statutory liens securing each unit owner's payment of those assessments. See § 718.116(5)(a), Fla. Stat. (2008) ("The association has a lien on each condominium parcel to secure the payment of assessments."). The association's agreement with LM Funding authorized LM Funding to hire Business Law Group to represent the association in the collection and lien enforcement efforts the agreement contemplated.

A company named LL 194 Investors owned a unit in Glendale Villas and failed to pay the assessments for that unit from 2006 onward. In June 2009, Business Law Group, on behalf of the association, recorded a claim of lien for the unpaid assessments in the official records of Pasco County, Florida. LL 194 Investors continued failing to pay its assessments. It appears, however, that Business Law Group took no further action to enforce the association's lien against LL 194 Investors.

At the same time it was failing to pay its assessments, LL 194 Investors was also failing to pay its real estate taxes. As a result, its unit was sold at a public auction at which AGM was the highest bidder. See § 197.542, Fla. Stat. (2009). AGM thereafter took title to the unit by way of a tax deed dated April 22, 2010. Pursuant to sections 197.552 and 197.573(2), the association's lien for assessments that were unpaid on the date of the tax deed was extinguished by the issuance of the tax deed.[1] Thus, the association had no further basis for a lien on the unit based on the assessments that LL 194 Investors had failed to pay before the tax deed sale.

Although the association had no further right to collect LL 194 Investors' unpaid assessments, Business Law Group wrote to AGM a few days after the tax deed was issued demanding that AGM pay them and notifying AGM of its intent to record a

---

[1]See also Cricket Props., LLC v. Nassau Pointe at Heritage Isles Homeowners Ass'n, 124 So. 3d 302, 305 (Fla. 2d DCA 2013) (holding that homeowners association's lien for unpaid assessments does not survive issuance of a tax deed); A to Z Props., Inc. v. Fairway Palms II Condo. Ass'n, 137 So. 3d 453, 455-56 (Fla. 4th DCA 2014) (holding that condominium association's lien for unpaid assessments does not survive issuance of a tax deed). Business Law Group argues that the law concerning the effect of a tax deed sale on a lien for unpaid assessments was unclear at the time of the actions at issue in this appeal. Whether Business Law Group is correct is not material, however, to our determination of the issue this appeal presents. We therefore express no opinion on that question.

claim of lien against the unit. AGM responded by notifying Business Law Group that it had purchased the unit at a tax deed sale and that the association's lien was therefore extinguished, and it enclosed a copy of the tax deed conveying title to the unit.

Then, on June 9, 2010, Business Law Group recorded a second claim of lien on behalf of the association. Like the first claim of lien, the second was based solely on LL 194 Investors' nonpayment of assessments that predated, and were extinguished by, the tax deed. AGM responded with a notice of contest of the association's purported lien, which required that the association commence a judicial action to enforce the lien within ninety days. See § 718.116(5)(c), Fla. Stat. (2009). The association's subsequent failure to commence judicial action within that ninety-day period rendered the lien void. Id.

In addition to its notice of contest on the second claim of lien, AGM filed a quiet title action against the association to clear the cloud on its title created by the association's first claim of lien based on LL 194 Investors' unpaid assessments. The association was represented by Business Law Group in the action. The association consented to the entry of a judgment providing that AGM's title was quieted against the association's purported lien. That judgment was entered on April 20, 2011.

Despite the judgment in the quiet title action, on May 31, 2011, Business Law Group recorded a third claim of lien on behalf of the association based on LL 194 Investors' unpaid assessments predating the tax deed. Two months later, it commenced the underlying action in this case by filing a complaint to foreclose the association's lien. AGM served an answer coupled with counterclaims against the association and third-party claims against LM Funding and Business Law Group. The

claims against Business Law Group were for abuse of process, malicious prosecution, and slander of title for its filing of multiple claims of lien based on an assessment lien that had been extinguished by the tax deed, by the association's failure to file suit within ninety days of AGM's notice of contest on the second claim of lien, and by the final judgment in the quiet title action.

Business Law Group sought to withdraw as the association's counsel, alleging that AGM's assertion of third-party claims against it created a potential conflict of interest with the association. The trial court granted that motion on March 28, 2012, and new counsel appeared for the association at some point thereafter. Two months later, however, Business Law Group recorded a fourth claim of lien on the association's behalf based on unpaid assessments predating the tax deed.

On April 16, 2013, the trial court entered a final partial summary judgment in AGM's favor on the association's lien foreclosure complaint, in which it found, as a matter of law, that the association's lien was vitiated by the tax deed and by the association's failure to sue within ninety days of AGM's notice of contest of the second claim of lien. The association, through its new counsel, appealed that judgment to this court.[2] Shortly thereafter, Business Law Group recorded a fifth and final claim of lien against AGM on behalf of the association. Like the four claims of lien preceding it, this one, too, was based on unpaid assessments pending at the time that the tax deed was issued.

---

[2]That appeal was voluntarily dismissed by the association in January 2014, after the events of significance to this appeal.

AGM thereafter amended its remaining third-party claims against Business Law Group to cover the fourth and fifth claims of lien and to add a count for injurious falsehood. Business Law Group filed a motion for summary judgment on all of AGM's tort claims against it. It argued that its preparation and filing of each of the five claims of lien was subject to the absolute privilege applicable to conduct in connection with judicial proceedings—known as the litigation privilege or the judicial proceedings privilege.[3] See generally Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole, 950 So. 2d 380, 383 (Fla. 2007) (discussing the "litigation privilege"); Fridovich v. Fridovich, 598 So. 2d 65, 68 (Fla. 1992) (discussing the "judicial proceedings privilege"). The motion alleged that the litigation privilege applied to all five claims of lien as a matter of law without making any distinction among each of the five lien filings. The summary judgment record consisted of the tax deed, the lien documents, and the court records described above.

The trial court granted summary judgment in favor of Business Law Group as to all the third-party claims, reasoning that the filing of each of the claims of lien was necessarily preliminary to the enforcement of the association's lien for unpaid assessments in a judicial proceeding and, as a result, that the absolute litigation privilege barred AGM's claims as a matter of law. AGM sought rehearing of that decision solely as it pertained to the fourth and fifth claims of lien—those filed both after the commencement of this action in the trial court and after the substitution of new

---

[3]Business Law Group had previously served affirmative defenses raising the litigation privilege. See LatAm Invs., LLC v. Holland & Knight, LLP, 88 So. 3d 240 (Fla. 3d DCA 2011) (noting that the litigation privilege is an affirmative defense.)

- 6 -

counsel for the association in the case—which was denied. The trial court entered a final judgment in favor of Business Law Group, from which AGM timely appeals.

II.

We review a trial court's decision to grant summary judgment de novo. Green v. APAC–Fla., Inc., 935 So. 2d 1231, 1233 (Fla. 2d DCA 2006). Because AGM has limited its appeal to the trial court's entry of summary judgment as it concerns the fourth and fifth claims of lien, it has not challenged the determination that the privilege applies to the first three claims of lien. The question for our resolution, then, is whether there is any genuine issue of material fact related to the application of litigation privilege to Business Law Group's conduct in filing the last two claims of lien.

The absolute privilege applicable to conduct in connection with judicial proceedings dates back to the common law of England. See DelMonico v. Traynor, 116 So. 3d 1205, 1211-12 (Fla. 2013) (citing Simpson Strong–Tie Co. v. Stewart, Estes, & Donnell, 232 S.W.3d 18, 22 (Tenn. 2007)). Although originally recognized as a defense to a claim for defamation founded on statements made in the course of judicial proceedings, the privilege in Florida has been extended to any tort or statutory cause of action based on false statements or other wrongful conduct. Echevarria, 950 So. 2d at 380-81 ("[T]he litigation privilege applies in all causes of action, statutory as well as common law."); see also Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co., 639 So. 2d 606, 608 (Fla. 1994) ("[A]bsolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . ."). The privilege reflects a policy judgment that in most cases "participants in litigation must be

free to engage in unhindered communication" and "to use their best judgment in prosecuting or defending a lawsuit" without fear of civil liability notwithstanding the potential harm to an individual on the receiving end of a defamatory statement or other bad act. Levin, 639 So. 2d at 608; see also DelMonico, 116 So. 3d at 1217 (explaining that the privilege derives from balancing the public interest in a free and adversarial system against the private interests of individuals in being free from harm).

The general rule concerning the litigation privilege is that litigation participants should be absolutely exempted from liability for conduct "in the course of judicial proceedings" so long as the conduct has "some relation to or connection with the subject of inquiry." DelMonico, 116 So. 3d at 1211. Florida courts have applied the privilege not only to conduct undertaken while litigation is ongoing but also to conduct that is "necessarily preliminary" to judicial proceedings. Fridovich, 598 So. 2d at 66 (quoting Ange v. State, 123 So. 916, 917 (Fla. 1929), for the proposition that the absolute privilege "arises immediately upon the doing of any act required or permitted by law in the due course of the judicial proceedings or as necessarily preliminary thereto" (emphasis omitted)); Fisher v. Debrincat, 169 So. 3d 1204, 1206 (Fla. 4th DCA 2015) (quoting Ange for same proposition), approved, No. SC15-1477 (Fla. Feb. 9, 2017).[4] Requiring that conduct preceding the institution of litigation be necessarily preliminary to judicial proceedings ensures that such conduct actually falls within the scope of the absolute litigation privilege. That is, the necessarily preliminary standard

---

[4]In its recent opinion in Fisher, issued after this case was submitted, the supreme court held that the litigation privilege is not a defense to a cause of action for malicious prosecution. No one has raised that issue in this case, but this may be an issue that needs to be addressed on remand.

ensures that the conduct shielded from liability is really of a kind that can be regarded as having been undertaken in the course of a judicial proceeding and not conduct undertaken separately from it.  See Ball v. D'Lites Enters., 65 So. 3d 637, 641 (Fla. 4th DCA 2011) (describing conduct as necessarily preliminary to judicial proceedings where it was a prerequisite to the judicial process); see also Echevarria, 950 So. 2d at 387 (Wells, J., concurring in part and dissenting in part) (explaining that the correspondence for defaulting borrowers was not necessarily preliminary to later foreclosure litigation where it was not "legally necessary" to prosecute foreclosures).

The trial court determined that Business Law Group's conduct in filing all five claims of lien was necessarily preliminary, as a matter of law, to judicial proceedings to enforce the association's lien for unpaid assessments.  The problem with this from a summary judgment standpoint is that the filing of each individual claim of lien occurred at different points with respect to pending and possible future judicial proceedings and cannot be considered one blanket act for the purposes of determining whether the litigation privilege applies.  The first three claims of lien were filed during the course of Business Law Group's representation of the association in its anticipated lien collection efforts in examples of what we suspect is the more typical circumstance in which a claim of lien is filed and the lien is then litigated.  The association's recording of a claim of lien is legally necessary to its institution of judicial foreclosure proceedings to enforce that lien.  See § 718.116(5)(b), (5)(c), (6)(b), Fla. Stat. (2010).  It is, in essence, the first step in invoking the judicial machinery of a lien foreclosure action.  Conduct of this type is quite plainly necessarily preliminary to the commencement of a judicial proceeding.  See, e.g., Stewart v. Sun Sentinel Co., 695 So. 2d 360, 362 (Fla. 4th DCA

1997) (holding that absolute privilege applied to a notice of claim required by statute to be served prior to litigation); see also Donohoe Constr. Co. v. Mt. Vernon Assocs., 369 S.E.2d 857, 861 (Va. 1988) (holding that absolute privilege protected filing of mechanic's lien because "it is a prerequisite to a suit to enforce").

Here, however, the limited summary judgment record raises material fact issues about whether the fourth and fifth claims of lien were also necessarily preliminary to any lien foreclosure proceedings. To begin with, at the time the fourth and fifth claims of lien were filed, lien foreclosure proceedings by the association based on the filing of the third claim of lien were already ongoing. Filing the third claim of lien was the only necessary action the association had to take preliminary to the enforcement of its lien in this foreclosure action. The record is silent as to how the subsequently recorded fourth and fifth claims of lien as to the same assessments owed by LL 194 Investors prior to the tax deed sale were preliminary or necessary to the ongoing judicial proceeding or to any related action in the future. No facts before the court suggest that any new and separate action to enforce the fourth and fifth claims of lien on behalf of the association was contemplated when those claims of lien were recorded.

On the contrary, the facts presented on this summary judgment record could easily be interpreted to show that such a future filing was not contemplated because the association's foreclosure action on the same lien was already in litigation, title had already been quieted in AGM's favor, and the lien was otherwise void as a matter of law. The dispute with the association over AGM's purported liability for assessments predating its tax deed, for all factual purposes, either had been or was about to be terminated. In other words, it is entirely debatable under the facts of this

case that no one ever contemplated commencing litigation based on the fourth and fifth claims of lien and, as a result, that the recording of those claims of lien was not preliminary to future litigation because the association's lien interest was already fully protected by the then-ongoing litigation the preliminary filing of the first three claims of lien had preserved.

Although no Florida court has addressed the question, it is well-accepted elsewhere that tortious conduct will not be protected by the litigation privilege as being preliminary to future litigation unless that future litigation was actually contemplated in good faith and under serious consideration.  See, e.g., Schanne v. Addis, 121 A.3d 942, 949-51 (Pa. 2015) (holding that absolute privilege does not extend to statements before commencement of a quasi-judicial proceeding without intent that it lead to one); Mansfield v. Bernabei, 727 S.E.2d 69, 75 (Va. 2012) (adopting rule requiring that absolute privilege extends to communications preliminary to litigation that is contemplated in good faith and under serious consideration); Smith v. Suburban Rests., Inc., 373 N.E.2d 215, 218 (Mass. 1978) (holding that denial of summary judgment on privilege grounds was proper where undisputed facts did not show "that the attorney seriously contemplated a judicial proceeding in good faith"); see also Restatement (Second) of Torts: Attorneys at Law § 586, cmt. e (Am. Law Inst. 1977) ("As to communications preliminary to a proposed judicial proceeding the [privilege] applies only when the communication has some relation to a proceeding that is contemplated in good faith and under serious consideration.").  That makes perfect sense.  As a matter of logic, one cannot regard an act as preliminary to an anticipated second act if no one ever really means to attempt the second act.  And, as a matter of the policy underlying

- 11 -

the litigation privilege, it does not protect the free prosecution and defense of litigation to allow parties to shield misconduct unrelated to the actual litigation from tort liability simply by describing that conduct as preliminary to a future judicial proceeding when, in fact, that later judicial proceeding was never seriously regarded by the party in good faith as a genuine possibility. This record presents material, disputed facts as to whether further lien enforcement litigation on the association's behalf was regarded in good faith as a genuine possibility in this case.

Moreover, Business Law Group recorded the fourth and fifth claims of lien after it had withdrawn from representing the association in the lien foreclosure action. It withdrew on grounds that AGM's third-party causes of action—which are based on Business Law Group's conduct in filing claims of lien on AGM's unit—presented a potential conflict of interest with the association. A factual dispute exists, then, over whether Business Law Group's withdrawal from its attorney-client relationship with the association concerning its disputes with AGM severed the attorney-client relationship as to any future litigation over the lien as well. Termination of that attorney-client relationship insofar as the association's ongoing dispute with AGM was concerned at least left Business Law Group as a stranger to the lien foreclosure action pending when it filed the fourth and fifth claims and raises a factual dispute over whether it would also be a stranger to any future enforcement proceedings concerning the same lien and on behalf of an association it had withdrawn from representing on the basis of a potential conflict of interest stemming from litigation against it based on its conduct in filing earlier claims of lien. If the facts are disputable regarding whether Business Law Group was acting on the association's behalf when it filed the last two claims of lien, then entering

summary judgment on AGM's third-party tort claims as related to the fourth and fifth claims of lien based on the application of the litigation privilege was error. An act taken outside the scope of Business Law Group's representation cannot have been necessarily preliminary to any future lien enforcement proceedings. See Restatement (Second) of Torts: Attorneys at Law § 586 (Am. Law Inst. 1977) (stating that the privilege protects an attorney with respect to proceedings "in which he participates as counsel").

We are mindful that questions concerning the application of the litigation privilege are regarded as questions of law, see, e.g., DelMonico, 116 So. 3d at 1211, and that the resolution of questions of litigation privilege at an early stage of the litigation furthers the policies underlying the privilege, see Levin, 639 So. 2d at 608 (describing policy of privilege as allowing the free and zealous prosecution or defense of a case by litigation participants "without fear of having to defend their actions in a subsequent civil action"). The legal question about the applicability of the privilege that this case presents, however, depends upon the answers to predicate factual questions concerning what further lien enforcement proceedings were contemplated and Business Law Group's role in those proceedings. The applicability of the litigation privilege may ordinarily rest on undisputed fact questions in other cases. In fact, the summary judgment entered in relation to the first three claims of lien was determinable as a matter of law in this case because facts as to the filing of those claims of lien were not in dispute. Material facts are in genuine dispute, however, over whether the law also applies to the filing of the last two claims of lien.

- 13 -

AGM's complaint alleged facts suggesting that the scope of Business Law Group's actions that were necessarily preliminary to enforce the association's lien ended either at the filing of the third claim of lien or at its withdrawal from the representation of AGM. Business Law Group alleges otherwise, but it did not present any summary judgment evidence showing that a new foreclosure action on its purported lien for unpaid assessments was contemplated after a pending foreclosure action on that very same lien was concluded. Nor did it produce summary judgment evidence to explain why, notwithstanding its withdrawal from the case, it had any reason to record the fourth and fifth claims of lien. Business Law Group therefore failed to demonstrate why, as a matter of law, those lien filings were necessarily preliminary to any subsequent judicial proceedings to the exclusion of the related factual questions that remain unresolved. The record as it stands presents genuine, material factual disputes relevant on that issue, and the trial court erred in entering summary judgment.

## III.

In sum, we hold that the trial court's grant of summary judgment on the counts related to the fourth and fifth claims of lien was improper because unresolved factual disputes prevented it from determining, as a matter of law, that Business Law Group's conduct was necessarily preliminary to future lien enforcement proceedings such that the absolute litigation privilege would apply.[5] The partial final summary

_____

[5]We note that the supreme court has receded from the view that all conduct preliminary to a judicial proceeding is absolutely privileged. Even where that standard is met, a qualified privilege may instead be applied where a balancing of the policy interests at stake and a consideration of the extent to which private individuals are protected from abusive litigation conduct by formal judicial processes suggest that an absolute privilege would be inappropriate. See DelMonico, 116 So. 3d at 1214, 1217-19; Fridovich, 598 So. 2d at 69. A qualified privilege protects a litigation

- 14 -

judgment on the third-party complaint against Business Law Group and its named

attorneys is reversed, and the case is remanded to the trial court for further proceedings

consistent with this opinion.

Reversed and remanded.

NORTHCUTT and SLEET, JJ., Concur.

---

participant from liability for conduct related to the subject of inquiry in a judicial proceeding unless the conduct was undertaken with express malice. See DelMonico, 116 So. 3d at 1219. We do not reach the issue of qualified privilege in this appeal because Business Law Group moved for summary judgment solely on grounds of absolute privilege. See Fla. R. Civ. P. 1.510(c) ("The motion must state with particularity the grounds upon which it is based and the substantial matters of law to be argued . . . ."). Furthermore, and perhaps relatedly, Business Law Group has not produced summary judgment evidence that would meet its initial burden of demonstrating the absence of a genuine issue of material fact on the question of express malice. See Bernhardt v. Halikoytakis, 95 So. 3d 1006, 1008 (Fla. 2d DCA 2012) ("The movant's burden is to come forward with competent evidence to demonstrate the nonexistence of a material issue of fact.").