# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

DANIEL DRISCOLL,

Petitioner,

v.

ERIC KNELLINGER and U.S. FEDERAL CONTRACTOR REGISTRATION, INC., a Florida corporation,

Respondents.

No. 2D23-459

_____

January 26, 2024

Petition for Writ of Certiorari to the Circuit Court for Pinellas County; Patricia Ann Muscarella, Judge.

Craig L. Berman of Berman Law Firm, P.A., St. Petersburg, for Petitioner.

Jonathan A. Stimler, Kevin E. Hyde, Wesley J. Martinez, and Caroline C. Dunkle, of Foley & Lardner, LLP, Jacksonville, for Respondents.

KHOUZAM, Judge.

Petitioner/Defendant Daniel Driscoll timely seeks certiorari review of an order denying his motion for judgment on the pleadings in this pending suit by Respondents/Plaintiffs U.S. Federal Contractor Registration, Inc. (USFCR), and Eric Knellinger. Mr. Driscoll asserts the order should be quashed because he has absolute immunity from this

lawsuit by virtue of the litigation privilege.  But because the complaint addresses and seeks liability for Mr. Driscoll's alleged acts taken before and outside of the context of any litigation, we deny the petition.

## ALLEGATIONS OF THE COMPLAINT

The complaint alleges the following facts.

Mr. Knellinger started USFCR in 2010, hired Mr. Driscoll, and granted him a fifty percent interest in the entity.  Both individuals received substantial regular and other distributions from USFCR.

Mr. Knellinger fell ill from cancer in 2017, and "[a]s a result, he had to step away from running the day-to-day operations of USFCR to receive treatment.  This intense course of treatment lasted throughout 2017 and 2018."  During this period of Mr. Knellinger's absence, Mr. Driscoll "attempted to secure permanent control over USFCR, and his actions caused direct or indirect harm to the company."

Upon his recovery and return to business, Mr. Knellinger recognized what Mr. Driscoll had done in his absence "and decided that [Mr. Driscoll]'s continued involvement in USFCR, in any capacity, was untenable.  Therefore, beginning in mid to late 2019, Mr. Knellinger attempted to negotiate with [Mr. Driscoll] to purchase his shares of the company, but these negotiations failed."

After the failed buyout negotiations, Mr. Knellinger sought to limit Mr. Driscoll's influence in the company.  In response, Mr. Driscoll produced "copies of apparent corporate documents, with stated dates in March 2018, which purportedly made [Mr. Driscoll] a director of USFCR." Mr. Driscoll "represented the corporate documents to be authentic and to accurately reflect actions taken on behalf of USFCR" and, based thereon, challenged Mr. Knellinger's authority to act unilaterally for USFCR.

2

Although Mr. Driscoll's documents reflect that Mr. Knellinger voted to make Mr. Driscoll a director of USFCR in March 2018, Mr. Knellinger was in fact undergoing intense cancer treatment at that time and denied that any such meeting had occurred, much less that he had ever elevated Mr. Driscoll. But the existence of the documents complicated and delayed any actions Mr. Knellinger could take to oust Mr. Driscoll.

After all of this transpired, "[w]ith no other options available, USFCR filed a lawsuit against [Mr. Driscoll] on August 18, 2020, with the goals of removing [Mr. Driscoll] from his purported roles in USFCR and recovering damages for the harm" he caused. Thereafter, Mr. Driscoll "continued to represent . . . that the documents that purported to make him a director of USFCR were genuine" and denied any fraud.

Ultimately, Mr. Knellinger, USFCR, and Mr. Driscoll reached terms for a Stock Purchase Agreement (SPA) in December 2020. The SPA included a general release from Mr. Knellinger and USFCR to Mr. Driscoll. It also required Mr. Driscoll to surrender the original corporate documents upon which he had relied in claiming he was a director.

After the deal closed, Mr. Driscoll initially resisted but eventually surrendered the documents. Mr. Knellinger determined the documents were falsified in order to fraudulently increase Mr. Driscoll's bargaining leverage in the stock negotiations and ultimately to enrich himself.

The complaint frames two counts. The first count is for fraud in the inducement, alleging that Mr. Driscoll falsified corporate documents to obstruct his removal from the company and thereby obtain more distributions from it. The second count is a civil action for criminal practices, alleging that Mr. Driscoll's fraud in maintaining his interest in and control of the entity amounted to a pattern of criminal activity.

## ANALYSIS

Mr. Driscoll seeks a writ of certiorari to quash the trial court's order denying his motion for judgment on the pleadings. He contends that he is absolutely immune from this lawsuit by virtue of the litigation privilege. But because the complaint plainly addresses considerable conduct taken outside of any litigation, the litigation privilege does not apply. Accordingly, the trial court did not err, much less depart from the essential requirements of the law, and we deny the petition.

In order to be entitled to certiorari relief, "the petitioner must establish the following three elements: '(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on postjudgment appeal.' " *Williams v. Oken*, 62 So. 3d 1129, 1132 (Fla. 2011) (quoting *Reeves v. Fleetwood Homes of Fla., Inc.*, 889 So. 2d 812, 822 (Fla. 2004)).

"Certiorari is not a writ of expediency and cannot be used to circumvent the non-final appeal rule." *Champaign Nat'l Bank & Tr. v. SOS Indus.*, 847 So. 2d 1164, 1165 (Fla. 5th DCA 2003). Thus, "[c]ertiorari is not generally available to review non-final interlocutory orders denying motions to dismiss or equivalent motions for judgment on the pleadings because the aggrieved party has a remedy on appeal." *Id.*

> Even so,
>
> [w]hen the trial court denies a motion to dismiss on immunity grounds, certiorari review of the non-final order is proper because absolute immunity protects a party from having to defend a lawsuit at all and waiting until final appeal would render such immunity meaningless if the lower court denied dismissal in error.

*James v. Leigh*, 145 So. 3d 1006, 1008 (Fla. 1st DCA 2014); *see also Baird v. Mason Classical Acad., Inc.*, 317 So. 3d 264, 268 (Fla. 2d DCA 2021) (explaining that where a party has "expressly invoked a statutory

4

right to protection from this lawsuit . . . we have jurisdiction to consider his timely certiorari petition challenging the order denying relief").

"It is well settled that in ruling on a defendant's motion for judgment on the pleadings, all the allegations set forth in the complaint must be taken as true and all the allegations in the answer, which are automatically denied, must be accepted as false." *Tanglewood Mobile Sales, Inc. v. Hachem*, 805 So. 2d 54, 55 (Fla. 2d DCA 2001). "Whether to grant a motion for judgment on the pleadings must be decided wholly on the pleadings, without the aid of outside matters." *Id.* Judgment on the pleadings is appropriate "only if the moving party is clearly entitled to judgment as a matter of law." *Id.* "It is improper to enter a judgment on the pleadings if factual questions remain to be resolved." *Id.*

"The general rule concerning the litigation privilege is that litigation participants should be absolutely exempted from liability for conduct 'in the course of judicial proceedings' so long as the conduct has 'some relation to or connection with the subject of inquiry.' " *AGM Invs., LLC v. Bus. L. Grp., P.A.*, 219 So. 3d 920, 924 (Fla. 2d DCA 2017) (quoting *DelMonico v. Traynor*, 116 So. 3d 1205, 1211 (Fla. 2013)).

Although qualifying conduct generally involves that taken "while litigation is ongoing," certain prelitigation conduct can qualify as well, so long as it is " 'necessarily preliminary' to judicial proceedings." *Id.* (quoting *Fridovich v. Fridovich*, 598 So. 2d 65, 66 (Fla. 1992)). By "[r]equiring that conduct preceding the institution of litigation be necessarily preliminary to judicial proceedings," this narrow exception "ensures that the conduct shielded from liability is really of a kind that can be regarded as having been undertaken in the course of a judicial proceeding and not conduct undertaken separately from it." *Id.* (citing *Ball v. D'Lites Enters.*, 65 So. 3d 637, 641 (Fla. 4th DCA 2011), as

5

"describing conduct as necessarily preliminary to judicial proceedings where it was a prerequisite to the judicial process").

Here, the court correctly denied the motion for judgment on the pleadings on the basis that the complaint fails to show that Mr. Driscoll is immune from suit. The complaint expressly alleges and seeks liability for conduct that did not arise while any relevant litigation was ongoing and which was not necessarily preliminary or a prerequisite to it.

Specifically, the complaint alleges that Mr. Driscoll took actions in 2017 and 2018 to harm USFCR. It alleges that in 2019 after these actions came to Mr. Knellinger's attention, the parties attempted to negotiate a buyout of Mr. Driscoll's shares in the entity.

After those 2019 negotiations failed, Mr. Knellinger attempted to limit Mr. Driscoll's influence in the entity. In response, Mr. Driscoll produced copies of allegedly false and fraudulent documents reflecting that he was a director. The documents were dated March 2018.

<u>After</u> all of this transpired, USFCR filed a lawsuit against Mr. Driscoll in August 2020. In December of that year, the parties reached terms on the SPA and closed the same month. When Mr. Driscoll eventually surrendered the corporate documents dated March 2018, Mr. Knellinger determined they were falsified and fraudulent.

Thus, the complaint alleges and concerns considerable conduct asserted to have occurred before and without connection to any litigation. The original damaging actions were alleged to have occurred in 2017-2018, the stock purchase negotiations began in 2019, and they fell apart before the filing of the 2020 action based on allegedly fraudulent documents dated and addressing actions as of March 2018. Those documents were created and relied upon, and Mr. Driscoll produced copies of them to Mr. Knellinger, before the litigation began.

6

Despite these allegations, Mr. Driscoll argues that he is nonetheless immune from this lawsuit because the "disagreement about the truth or falsity of [his] representations was not only relevant to but the genesis of the 2020 Lawsuit." We reject this contention.

The litigation privilege does not immunize allegedly fraudulent conduct merely because a lawsuit is later filed about it. Nor does the fact Mr. Driscoll continues to deny that the documents were falsified immunize him from suit for his prelitigation conduct; defendants routinely maintain their prelitigation positions throughout the course of the proceedings. Indeed, Mr. Driscoll's characterization that his representations were "the genesis" of the earlier suit appears to operate as an admission that they spawned the suit—not the other way around.

To the extent Mr. Driscoll suggests that the release in the SPA immunizes him from this lawsuit, he is mistaken. A release of liability is an affirmative defense. *See* Fla. R. Civ. P. 1.110(d) (listing "release" as an affirmative defense); *see also, e.g.*, *Give Kids the World, Inc. v. Sanislo*, 98 So. 3d 759, 760-61 (Fla. 5th DCA 2012) (reversing for entry of summary judgment on "affirmative defense of release"), *approved*, 157 So. 3d 256, 271 (Fla. 2015). Although Mr. Driscoll may have valid defenses to the lawsuit by virtue of the release in the SPA, it does not render him immune from suit.

Because Mr. Driscoll has not established a departure from the essential requirements of the law, we deny his petition.

Denied.

LaROSE and SMITH, JJ., Concur.

_____

Opinion subject to revision prior to official publication.

7