# Third District Court of Appeal

## State of Florida

Opinion filed August 1, 2018.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D16-2756
Lower Tribunal No. 14-27252

————————————

**David Rahimi, etc.,**
Appellant,

vs.

**Global Discoveries, Ltd., LLC,**
Appellee.

————————————

An Appeal from the Circuit Court for Miami-Dade County, Jorge E. Cueto, Judge.

Murdoch, Weires & Neuman, PLLC and Scott A. Weires (Boca Raton), for appellant.

McCumber, Daniels, Buntz, Hartig, Puig & Ross, P.A., Amy L. Dilday, Starlett M. Massey, and Jonathan D. Kaplan (Tampa), for appellee.

Before ROTHENBERG, C.J., and SALTER and LUCK, JJ.

LUCK, J.

Florida statutes allow for the government-sponsored forced sale of real property to pay the overdue property tax bill owed on that property. If, after the

money from the sale has been used to pay the property taxes and other government liens, there is a balance – or surplus – the surplus is to be paid to the property's titleholders, lienholders, and mortgagees. But what date must the clerk use to determine which titleholders, lienholders, and mortgagees are entitled to the surplus – the date of the sale or when the court adjudicates disputed claims to the surplus? Because we agree with the trial court that the determination of who is entitled to the surplus is made at the time of the tax deed sale, we affirm the summary judgment.

*Factual Background and Procedural History*

Ila Weiner purchased a condominium at the Mayfair House on January 5, 2005. About a year later, she took out a mortgage loan on the property with Regions Bank in the amount of $193,000. In September 2007, the loan, which at this time had $198,539.73 owing, was modified. Soon thereafter, Weiner executed the first of three warranty deeds transferring the property to the Mayfair 555 Trust. David Rahimi is the current trustee of this trust.

Taxes on the condominium were not paid, and, on June 12, 2014, the property was sold at a tax deed sale. The sale, after the taxes were paid off, resulted in a surplus of $92,519.89, which remained in the court registry. Global Discoveries, Ltd. is a company that recovers judicial sale surplus proceeds on behalf of mortgagees. The company obtained an assignment from Regions Bank to

recover the subject funds. At the time, the amount owed on the modified mortgage loan was $208,618.92.

Two lawsuits were filed to recover the surplus. Rahimi filed a complaint to quiet title, which sought to recover the surplus funds resulting from the tax deed sale. Upon the filing of the quiet title action, the clerk marked the funds "do not disburse." When Global Discoveries filed a statement of claim against the surplus, the clerk refused to disburse the money. Global Discoveries then filed a declaratory action to compel disbursement based on the priority held by the mortgage. Rahimi moved to intervene in the declaratory action and the trial court eventually consolidated the two cases.

While the two cases were pending, on January 14, 2016, Regions Bank recorded a release of mortgage. The release stated that Regions Bank "cancel[led] and discharge[d]" the subject mortgage. Nonetheless, Global Discoveries moved for summary judgment asserting that "discharge of the [m]ortgage . . . does not release the prior titleholder's obligation to pay the [l]oan, it only releases the property from serving as collateral for the [l]oan." The trial court concluded that the mortgage lien had priority to the surplus funds regardless of the later release. Thus, it granted summary judgment in favor of Global Discoveries and ordered the clerk to disburse the surplus to the company.

This is the appeal of that order.

3

"When considering a motion for summary judgment, the trial court must determine that no genuine issue of material fact exists, and the moving party is entitled to summary judgment as a matter of law. A trial court's entry of summary judgment based on its interpretation of a statute is reviewed de novo." Mesa v. BMW of N. Am., LLC, 904 So. 2d 450, 453 (Fla. 3d DCA 2005) (citations omitted).

*Discussion*

Rahimi contends he is entitled to the surplus funds because at the time the trial court decided the conflicting claims to the surplus Regions Bank was no longer a mortgagee with rights to the proceeds of the tax deed sale. Global Discoveries responds that entitlement to the surplus money is determined at the time of the tax deed sale, and at the time that the Mayfair House condominium was sold, Regions Bank was the mortgagee of record entitled to the surplus. We agree with Global Discoveries based on our reading of the tax deed statutes.

Four tax deed statutes are relevant here. Section 197.582, entitled "Disbursement of proceeds of sale," provides:

> (2) If the property is purchased for an amount in excess of the statutory bid of the certificateholder, the excess must be paid over and disbursed by the clerk…. The clerk shall distribute the excess to the governmental units for the payment of any lien of record held by a governmental unit against the property, including any tax certificates not incorporated in the tax deed application and omitted taxes, if

4

any…. If, after all liens of governmental units are paid in full, there remains a balance of undistributed funds, the balance shall be retained by the clerk for the benefit of persons described in s. 197.522(1)(a) . . . as their interests may appear. The clerk shall mail notices to such persons notifying them of the funds held for their benefit….

§ 197.582(2), Fla. Stat. (2014). Section 197.582 references section 197.522(1)(a):

The clerk of the circuit court shall notify, by certified mail with return receipt requested or by registered mail if the notice is to be sent outside the continental United States, the persons listed in the tax collector's statement pursuant to s. 197.502(4) that an application for a tax deed has been made. Such notice shall be mailed at least 20 days prior to the date of sale. If no address is listed in the tax collector's statement, then no notice shall be required.

Id. § 197.522(1)(a). Section 197.522(1)(a) then references section 197.502(4):

The tax collector shall deliver to the clerk of the circuit court a statement that payment has been made for all outstanding certificates or, if the certificate is held by the county, that all appropriate fees have been deposited, and stating that the following persons are to be notified prior to the sale of the property:

(a) Any legal titleholder of record if the address of the owner appears on the record of conveyance of the property to the owner. However, if the legal titleholder of record is the same as the person to whom the property was assessed on the tax roll for the year in which the property was last assessed, the notice may be mailed to the address of the legal titleholder as it appears on the latest assessment roll.

(b) Any lienholder of record who has recorded a lien against the property described in the tax certificate if an address appears on the recorded lien.

(c) Any mortgagee of record if an address appears on the recorded mortgage or if the mortgagee has designated an address with the Department of State pursuant to s. 655.0201(2), then the notice must be sent to the address on file with the Department of State.

Id. § 197.502(4)(a)-(c).  Finally, section 197.552 provides that:

> All tax deeds shall be issued in the name of a county and shall be signed by the clerk of the county. The deed shall be witnessed by two witnesses, the official seal shall be attached thereto, and the deed shall be acknowledged or proven as other deeds. Except as specifically provided in this chapter, no right, interest, restriction, or other covenant shall survive the issuance of a tax deed, except that a lien of record held by a municipal or county governmental unit, special district, or community development district, when such lien is not satisfied as of the disbursement of proceeds of sale under the provisions of s. 197.582, shall survive the issuance of a tax deed. The charges by the clerk shall be as provided in s. 28.24. Tax deeds issued to a purchaser of land for delinquent taxes shall be in the form prescribed by the department. All deeds issued pursuant to this section shall be prima facie evidence of the regularity of all proceedings from the valuation of the lands to the issuance of the deed, inclusive.

Id. § 197.552.  Three times (at least), the tax deed statutes tell us the determination of who is entitled to the surplus is made at the time of the sale.

First time.  After the property tax bill and other government liens are paid off, the court clerk holds the "balance" (or surplus) of the tax deed sale "for the benefit of person described in section 197.522(1)(a)."  Id. § 197.582(2).  Section 197.522(1)(a) refers to "the persons listed in the tax collector's statement pursuant to section 197.502(4)."  Id. § 197.522(1)(a).  These "persons" must be notified by the court clerk, and the notice must be mailed out "at least 20 days prior to the date of sale."  Id.  The "persons" receiving notice are the titleholder to the property up for sale, "[a]ny lienholder of record who has recorded a lien against the property," and "[a]ny mortgagee of record."  Id. § 197.502(4)(a)-(c).

6

The clerk, thus, is required to hold the surplus for benefit of the titleholder, lienholders of record, mortgagees of record, and others defined in section 197.502(4). The determination of which titleholder, lienholders, and mortgagees are entitled to the benefit of the surplus is made based on the notice that is sent out twenty days before the sale. Only those titleholders, lienholders, and mortgagees that are of record before the tax deed sale are entitled to notice, and those for whom the clerk is holding the surplus.

Here, it is undisputed that Regions Bank recorded a mortgage on the Mayfair House condominium years before the tax deed sale, and the mortgage had not been released when the property was sold in 2014. In order to be included in the group of people entitled to notice of both the tax sale and the existence of a surplus, the mortgagee must have a mortgage of record prior to the sale. Regions Bank did, so the clerk was holding the surplus for the benefit of Regions Bank (and the others entitled to notice).

Second time. Once there's a "balance" following the sale after paying off the property tax bill and any government liens, "the clerk shall mail notices to such persons notifying them of the funds held for their benefit." Id. § 197.582(2). "[S]uch persons" are those titleholders, lienholders, and mortgagees of record that also received notice at least twenty days prior to the sale. Id. The "excess

7

proceeds shall be presumed payable or distributable on the sale the notice is sent."

Id.

The money held by the clerk, in other words, is "presumed payable" to those that are required to receive notice. The notice list includes titleholders, lienholders, and mortgagees of record at the time of the sale.

Here, again, it is undisputed that Regions Bank had a recorded mortgage on the property at the time of the tax deed sale. As one of "the persons" required to be notified, payment to Regions Bank was presumed once the clerk sent the notice following the sale.

Third time. After the sale, once the tax deed is issued to the new owner, "no right, interest, restriction, or other covenant shall survive the issuance of a tax deed." Id. § 197.522. The tax deed statutes "extinguish any covenant that creates a lien or requires a [new owner] to 'expend money for any purpose' for debts that precede the issuance of the tax deed. Both the lien and the [new owner's] liability for the preexisting debt are extinguished upon issuance of the deed." Lunohah Invs., LLC. v. Gaskell, 158 So. 3d 619, 621 (Fla. 5th DCA 2013); see also A to Z Props., Inc. v. Fairway Palms II Condo. Assoc., Inc., 137 So. 3d 453, 456 (Fla. 4th DCA 2014) (same); Cricket Props., LLC v. Nassau Pointe at Heritage Isles Homeowners Ass'n, Inc., 124 So. 3d 302, 307 (Fla. 2d DCA 2013) ("Under sections 197.552 and 197.573(2), any lien Nassau may have had for unpaid

8

homeowners association assessments did not survive the issuance of the tax deed."). The prior liens are extinguished in exchange for the prior lienholder's interest in the surplus.

This is what happened to Regions Bank's lien on the Mayfair House condominium. It was extinguished after the property was sold at the tax sale and the deed was issued. In exchange for wiping the title clean of non-government liens, the tax deed statutes give former lienholders an interest in the surplus. The extinguishment and the interest in the surplus are exchanged after the sale, when the deed is issued, and not years later when the dispute over the surplus is litigated.[1]

\*    \*    \*    \*

Although the tax deed statutes require that entitlement to the surplus be decided at the time of the sale, this also happens to be good sense. Determining entitlement at the time of the sale allows for an orderly distribution of the surplus from a defined and finite pool of applicants. The clerk can easily determine from the notices who was entitled to the surplus and distribute the money without much administrative hassle and years of litigation. Doing it the other way, as Rahimi suggests, would have the clerk holding onto significant amounts of money waiting

---

[1] Rahimi may still have a claim against Regions Bank if the bank improperly kept the surplus money, but that is not the issue in this case. This case is about whether the trial court properly determined that Regions Bank was entitled to the surplus because it held a mortgage of record at the time of the sale. We read the law to be clear and unambiguous that it was.

9

for years of litigation to be over.  This prolongs the distribution process, adds administrative burdens on the clerks and the courts, and creates uncertainty in the process.

*Conclusion*

We conclude that the determination of who is entitled to the surplus of a tax sale is made at the time of the sale.  Because it is undisputed that Regions Bank had a lien and mortgage interest in the Mayfair House condominium at the time of the sale, we affirm the trial court's summary judgment in favor of Regions Bank on the declaratory judgment and quiet title cases.

Affirmed.