# Third District Court of Appeal

## State of Florida

Opinion filed March 15, 2023.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D22-835
Lower Tribunal No. 21-18225

————————————

**S and A Property Investment Services, LLC,**
Appellant,

vs.

**Pedro J. Garcia, etc., et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Pedro P. Echarte, Jr., Judge.

Law Office of Stanley H. Beck, and Stanley H. Beck (Hallandale Beach), for appellant.

Geraldine Bonzon-Keenan, Miami-Dade County Attorney, and Daija Page Lifshitz, Assistant County Attorney, for appellees Pedro J. Garcia and Peter Cam.

Before SCALES, MILLER and BOKOR, JJ.

SCALES, J.

Appellant, plaintiff below, S and A Property Investment Services, LLC ("Taxpayer"), appeals an April 26, 2022 final summary judgment entered in favor of appellees, defendants below, Pedro J. Garcia, the Miami-Dade County Property Appraiser ("Property Appraiser") and Jim Zingale, executive director of the Florida Department of Revenue.[1] The trial court's summary judgment confirmed a determination by both the Property Appraiser and the Miami-Dade County Value Adjustment Board ("VAB") that, under the facts presented, the conveyance of the subject non-homestead residential property from Taxpayer's owners to Taxpayer constituted a "change of ownership or control" of the property. As such, the trial court found, pursuant to section 193.1554(3) of the Florida Statutes, that the Taxpayer lost its annual assessment cap (the "10% Assessment Limitation").

We affirm because the Taxpayer's assertion that the conveyance to Taxpayer was merely a transfer between legal and equitable title, rather than a change of ownership, is belied by (i) the plain language of section 193.1554, (ii) the subject quitclaim deed, and (iii) Florida's limited liability company (LLC) law.

**I. Relevant Factual Background**

---

[1] The Florida Department of Revenue filed a notice of joinder below, adopting the Property Appraiser's pleadings at the summary judgment stage. The Department did not file an answer brief with this Court.

In 2000, Sylvester and Angela Anderson (the "Andersons") purchased, as tenants by the entireties, a non-homestead property in Miami (the "Subject Property"). In 2015, the Andersons established Taxpayer, a for-profit Florida limited liability company, with the Florida Department of State's Division of Corporations. Angela Anderson owns fifty-one percent of Taxpayer; Sylvester Anderson owns the remaining forty-nine percent.

In June 2019, the Andersons executed a quitclaim deed transferring to Taxpayer fee simple interest in the Subject Property. The Andersons received no consideration for the transfer, and, according to the testimony of Angela Anderson, the Andersons transferred the Subject Property to Taxpayer so that the Andersons would not face any personal tort liability arising from their ownership of the Subject Property.

While the Andersons owned the Subject Property as tenants by the entireties, they enjoyed the 10% Assessment Limitation for non-homestead residential property on the Subject Property. In January 2020, though, after the 2019 transfer of the Subject Property from the Andersons to Taxpayer, the Property Appraiser re-assessed the Subject Property at its just value, thereby removing the 10% Assessment Limitation. Without the benefit of the 10% Assessment Limitation that the Andersons had enjoyed, the Property

3

Appraiser's assessed value of the Subject Property rose from $104,023 in 2019, to $273,409 in 2020, resulting in an increased property tax liability.

## II. Procedural History

Taxpayer appealed its 2020 tax assessment to VAB, challenging the Property Appraiser's decision to remove the 10% Assessment Limitation from the Subject Property. The VAB magistrate ruled in favor of the Property Appraiser and denied Taxpayer's VAB appeal.

Taxpayer then, pursuant to sections 194.036(2) and 194.171 of the Florida Statutes,[2] filed a two-count complaint in circuit court. Count II of Taxpayer's complaint challenged the Property Appraiser's removal of the Andersons' 10% Assessment Limitation.[3]

The parties filed cross-motions for summary judgment. Taxpayer's summary judgment evidence consisted of an affidavit by Angela Anderson stating the legal conclusion that the Andersons retained equitable ownership of the Subject Property after quitclaiming the Subject Property to Taxpayer. Thus, according to Angela Anderson's affidavit, the transfer was "between

---

[2] These related statutes provide a taxpayer with the right to file an action in circuit court to contest a tax assessment.

[3] Count I of the complaint, which eventually was dismissed, challenged the market value assigned to the Subject Property, and is not a part of this appeal.

4

legal and equitable title," and therefore, did not constitute a "change of ownership" under section 193.1554(5). After an April 18, 2022 hearing on the parties' competing summary judgment motions, the trial court entered the challenged April 26, 2022 final summary judgment in favor of the Property Appraiser, rejecting Taxpayer's assertion that the Andersons had retained equitable title after transferring the Subject Property to Taxpayer. The trial court found that nothing in the quitclaim deed or in Taxpayer's LLC operating agreement indicated that the Andersons retained equitable title in the Subject Property. Taxpayer timely appealed the judgment.

**III. Analysis[4]**

*A. Section 193.1554*

As mentioned above, section 193.1554(3) provides that any change resulting from the annual assessment of a non-homestead residential property is capped at ten percent of the assessed value of the property for the prior year. § 193.1554(3), Fla. Stat. (2020). The property retains this 10% Assessment Limitation so long as the property does not undergo "a change of ownership or control." § 193.1554(5), Fla. Stat. (2020). If, however, there

---

[4] This Court reviews *de novo* a trial court's summary judgment. Ibarra v. Ross Dress for Less, Inc., 350 So. 3d 465, 467 (Fla. 3d DCA 2022). A trial court's interpretation of a statute is reviewed *de novo* as well. Rahimi v. Global Discoveries Ltd., LLC, 252 So. 3d 804, 806 (Fla. 3d DCA 2018).

is "a change of ownership or control," the property "shall be assessed at just value as of January 1 of the year following such change in ownership or control." Id.

Section 193.1554(5) defines "a change of ownership or control" as "any sale, foreclosure, transfer of legal title or beneficial title in equity to any person, or the cumulative transfer of control or of more than 50 percent of the ownership of the legal entity that owned the property when it was most recently assessed at just value." Id.

The statute contains four express exemptions to this definition. The exemption at issue in the instant case reads as follows: "There is no change of ownership if: . . . [t]he transfer is between legal and equitable title." § 193.1554(5)(b), Fla. Stat. (2020).

B. *Crescent City Miami* and *Kuro* cases

Taxpayer asserts on appeal, as it did below, that the Property Appraiser wrongfully characterized the Andersons' 2019 conveyance of the Subject Property to Taxpayer as a change of ownership of the property. Taxpayer asserts that when real property is transferred from two married individuals to an LLC that is owned solely by the two married individuals, as occurred here, only a transfer between legal and equitable title has occurred, and ownership has not changed for the purposes of section 193.1554(5)(b).

6

In support of its argument, Taxpayer relies on two cases construing a different statute from the one involved here – section 201.02(1) of the Florida Statutes, the documentary tax statute.[5] These cases are <u>Crescent Miami Center, LLC v. Florida Department of Revenue</u>, 903 So. 2d 913 (Fla. 2005) and <u>Kuro, Inc. v. State Department of Revenue</u>, 713 So. 2d 1021 (Fla. 2d DCA 1998). The <u>Crescent Miami Center</u> Court held that "the transfer of property between a grantor and its wholly owned grantee, absent any exchange of value, is without consideration or a purchaser and thus not subject to the documentary stamp tax in section 201.02(1)." <u>Crescent</u>, 903 So. 2d at 919; <u>see</u> <u>Kuro, Inc.</u>, 713 So. 2d at 1022 ("[w]e conclude that Kuro was not a purchaser within the meaning of section 201.02(1) and, thus, no additional taxes were due. Section 201.02(1) applies to transfers of real estate for consideration to a 'purchaser.'")

Taxpayer asserts that the transfer from the Andersons to Taxpayer is identical to the transfers in <u>Crescent Miami Center</u> and <u>Kuro, Inc.</u> where in each of those cases the courts concluded that the challenging taxpayer was not a "purchaser" under section 201.02(1). <u>Crescent Miami Center</u>, 903 So.

---

[5] In relevant part, this statute provides that when a deed for real property is conveyed, the purchaser shall pay a documentary stamp tax of $.70 per every $100 of consideration paid for that real property. § 201.02(1), Fla. Stat. (2020).

2d at 919; Kuro, Inc., 713 So. 2d at 1022 (holding that the "beneficial ownership of the land remained unchanged."). Taxpayer urges us to come to a similar conclusion when analyzing the transactions under section 193.1554(5).

The inquiry in both Crescent Miami Center and Kuro, Inc. was whether, under section 201.02(1), there had been a sale, supported by consideration, to a "purchaser." As the Crescent Miami Center and Kuro, Inc. Courts held, documentary tax liability under section 201.02(1)'s plain language is triggered only when there is a "purchaser" and, relatedly, when there is "consideration." Crescent Miami Center, 903 So. 2d at 918; Kuro, Inc., 713 So. 2d at 1022. While our inquiry under section 193.1554(5) might seem similar to the inquiry undertaken by the Crescent Miami Center and Kuro, Inc. courts, our focus is not whether there was a purchaser and consideration for the transaction. Rather, our focus, based on section 193.1554(5)'s plain language, is whether there was a "change of ownership." Clearly, the transfer of the property from the Andersons – who held the property in the entireties – to Taxpayer, a Florida LLC, constituted a change of ownership.

Taxpayer is an entity separate and distinct from its owners, the Andersons. § 605.0108(1), Fla. Stat. (2020); Palma v. S. Fla. Pulmonary & Critical Care, LLC, 307 So. 3d 860, 866 (Fla. 3d DCA 2020 ("[A]n LLC is an

8

autonomous legal entity, separate and distinct from its members").[6] Indeed, the purpose of the 2019 transfer of the Subject Property to an LLC was to separate the Andersons from their ownership of the property so that tort liability for occurrences on the property would not touch them. Nothing in the summary judgment record indicates that this purpose was not effectuated by the transfer.

Plainly, there was a "change of ownership" – as that term is defined in section 193.1554(5) – in the Subject Property. The transfer to LLC ownership was not a mere "book transaction," as Taxpayer suggests. We find Taxpayer's reliance on Crescent Miami Center and Kuro, Inc. unpersuasive.

### C. Transfer between Legal and Equitable Title – the Statutory Exception

Finally, Taxpayer asserts that, because the Andersons control Taxpayer, the 2019 transfer was merely "between legal and equitable title,"

---

[6] While not critical to our analysis, we note that, contrary to Taxpayer's assertion, this transfer was not a mere "book transaction" whereby they "received no interest in the property that they did not already have before the transfer." Crescent Miami Center, 903 So. 2d at 916. Before the transfer, each Anderson spouse, as a tenant in the entirety, owned a one hundred percent undivided interest by the property with a right of survivorship. See Beal Bank, SSB v. Almand & Assocs., 780 So. 2d 45, 52 (Fla. 2001). After the transfer, Angela Anderson owned a fifty-one percent interest and Sylvester Anderson owned a forty-nine percent interest in Taxpayer. Additionally, the summary judgment record does not indicate that the Andersons' ownership interest in Taxpayer was subject to a right of survivorship.

and therefore, pursuant to the statutory exception found in section 193.1554(5)(b), no change of ownership occurred. Put another way, Taxpayer argues that only legal title to the Subject Property was transferred by the quitclaim deed, and that the Andersons retained equitable title to the Subject Property because they are the owners of Taxpayer. They claim the authority to "revest" ownership of the Subject Property.

In our view, Taxpayer's argument misapprehends the effect of a quitclaim deed, Florida LLC law, and equitable ownership. First, it is black-letter Florida real property law that when a grantor delivers a quitclaim deed, the grantor is divested of any interest in the deeded property, and any interest of the grantor vests in the grantee. See June Sand Co. v. Devon Corp., 23 So. 2d 621, 623 (Fla. 1945). "When the language of a deed is clear and certain in meaning and the grantor's intention is reflected by the language employed, there is no room for judicial construction of the language nor interpretation of the words used." Rogers v. United States, 184 So. 3d 1087, 1095 (Fla. 2015) (quoting Saltzman v. Ahern, 306 So. 2d 537, 539 (Fla. 1st DCA 1975)). The quitclaim deed in this case unambiguously transferred fee simple ownership of the Subject Property to Taxpayer. Neither the deed, nor any other document in the summary judgment record,

purports to reserve to the Andersons any interest, equitable or otherwise, in the Subject Property.

Also, of import here, the grantee Taxpayer is a Florida limited liability company. Section 605.0110 of the Florida Statutes unequivocally specifies that "[a]ll property originally contributed to the limited liability company or subsequently acquired by a limited liability company by purchase or other method is limited liability company property." § 605.0110(1), Fla. Stat. (2019). "It is basic hornbook law that 'corporate property is vested in the corporation itself, and not in the individual stockholders, *who have neither legal nor equitable title in the corporate property***.'**" Brevard Cnty. v. Ramsey, 658 So. 2d 1190, 1196 (Fla. 5th DCA 1995) (quoting In re Miner, 177 B.R. 104, 106 (Bankr. N.D. Fla. 1994) (emphasis added)). Consequently, an LLC member has "no interest in any *specific limited liability company property*." § 605.0110(4), Fla. Stat. (2019) (emphasis added).

Taxpayer has cited no authority for the proposition that owners or members of an LLC who convey, via quitclaim deed, real property to an LLC retain, as a matter of law, the equitable title to the conveyed property because those owners or members control the LLC. We therefore agree with the Property Appraiser, VAB, and the trial court that, for the purposes of

11

section 193.1554(5)(b), the Andersons did not retain equitable ownership of the Subject Property when they conveyed the Subject Property to Taxpayer.

**IV. Conclusion**

The transfer from the Andersons to the Taxpayer constituted a "change of ownership" of the Subject Property. While we are not unsympathetic to Taxpayer's argument that the 10% Assessment Limitation should be retained under the circumstances presented here, we are simply not free, by judicial fiat, to craft what would amount to a fifth exception to section 193.1554(5) to exempt from the definition of "change of ownership" any real property transfer from individuals to a Florida limited liability company wholly owned by such individuals. We therefore affirm the trial court's final summary judgment for appellees.

Affirmed.